Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
800 Third Avenue, 11th Floor
New York, New York 10022
Tel: (212) 868-1010
Fax: (212) 868-0013
Email: paloe@kudmanlaw.com
        dsaponara@kudmanlaw.com

*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BRANDED APPAREL GROUP LLC,[1] | Case No. 20-12552-scc |
| Debtor. | (Subchapter V) |

**DEBTOR'S MOTION FOR ENTRY OF ORDERS PURSUANT TO
11 U.S.C. §§ 105, 363, AND 365, AND BANKRUPTCY RULES 2002, 6004, AND 6006:
(A) FIXING THE TIME, DATE, AND PLACE FOR HEARING TO CONSIDER
BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR
OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (B)(i)
ESTABLISHING BIDDING PROCEDURES, (ii) APPROVING THE FORM
AND MANNER OF NOTICES, AND (iii) SETTING HEARING DATE FOR
THE HEARING ON APPROVAL OF THE SALE OF SUBSTANTIALLY ALL
OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS,
AND ENCUMBRANCES; AND (C) GRANTING RELATED RELIEF**

Branded Apparel Group LLC (the "**Debtor**"), the debtor and debtor-in-possession in the

above-captioned chapter 11 case (the "**Chapter 11 Case**"), by its proposed counsel, Kudman

Trachten Aloe Posner LLP, respectfully submits this motion (the "**Sale Motion**") seeking the

following relief:

---

[1] The last four digits of the Debtor's federal tax identification number is 8524. The location of the Debtor's service
address is: 141 West 36th Street, 10th Fl., New York, NY 10018.

a. Entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**"): (a) establishing bidding procedures and bid protections, including an auction, as set forth herein (the "**Bidding Procedures**"), with respect to the sale of substantially all of the Debtor's assets free and clear of liens, claims, interests, and encumbrances; (b) approving the form and manner of notices thereof (the "**Bidding Procedures Notice**") attached hereto as **Exhibit B**; (c) establishing JS Brands LLC ("**JS Brands**" or "**Stalking Horse**") as the stalking horse bidder for the Debtor's assets; (d) approving the form of Asset Purchase Agreement by and among the Debtor and JS Brands (the "**Stalking Horse APA**"), attached hereto as **Exhibit C**, pursuant to which the Debtor proposes to sell the Debtor's assets to JS Brands or a third party or parties that make higher and/or better offer(s) for those assets (the "**Proposed Sale**"); and (e) setting a hearing (the "**Sale Hearing**") to consider approval of the Proposed Sale; and

b. Entry of an order pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, substantially in the form attached hereto as **Exhibit D** (the "**Sale Order**"): (i) approving the sale of the Debtor's assets free and clear of liens, claims, interests, and encumbrances, and (ii) granting related relief.

In support of the Sale Motion, the Debtor submits the Declaration of Jason Jacobs Pursuant to Local Bankruptcy Rule 1007-2 and in Support of the Chapter 11 Petition, Proposed Subchapter V Plan, and First Day Motions (the "**Jacobs Declaration**")[2] and respectfully states as follows:

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief sought herein are sections 363 and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et. seq. (the "**Bankruptcy Code**"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Jacobs Declaration.

## BACKGROUND

### I.    Case Background

5.    The Debtor is a family-owned apparel manufacturer that designs, imports, merchandises, and markets men's apparel and accessories under a licensed brand as well as private-label brands.

6.    On October 29, 2020 (the "**Petition Date**") the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

7.    A detailed account of the of the Debtor's business and the events precipitating the bankruptcy filing are included in the Jacobs Declaration.

### II.    Prepetition Facilities with MFG

#### A.  The Factoring Facility

8.    Since 2014, Merchant Factors Corp. d/b/a Merchant Financial Group ("**MFG**") has served as the Debtor's principal lender pursuant to a revolving factoring facility comprised of the Prepetition Credit Agreements.

9.    On March 9, 2018, the Debtor and MFG worked out the then outstanding obligations under the Prepetition Credit Agreements pursuant to a Binding Term Sheet to establish (i) a Factoring Facility, providing the Debtor the ability to borrow 90% of accounts receivable and 50% of the landed-duty paid cost of eligible inventory; (ii) a Term Note with a principal value, as of March 9, 2018, of $1,250,000; and (iii) a Limited Recourse Loan  with a principal value, as of March 9, 2018, of $1,300,000.

10.    As of the Petition Date, MFG claims that it is owed the principal amount of $3,455,671.45 under the Factoring Facility; $950,190.93 under the Term Note; and $1,300,000.00

under the Limited Recourse Loan.[3] MFG purports to have a perfected security interest by having filed a UCC-1 Financing Statement with the Delaware Secretary of State.

## NEED FOR A TIMELY SALES PROCESS

11.     The need for a prompt sale process is evident from the circumstances that caused the filing of the Chapter 11 Case as described more fully in the Jacobs Declaration.

12.     The Debtor has no ability to fund the production of the Spring 2021 season. Absent consummation of the Proposed Sale within the timeline contemplated by the Sale Motion, the Debtor believes that it may not be able to realize the maximum value of its assets for the benefit of all stakeholders. Indeed, with orders for the Spring 2021 season fast approaching, if the Debtor is unable to accept and fill these orders, customers will soon look elsewhere for their purchasing needs, and the value of the Debtor's business will decrease precipitously.

13.     A prompt sale is necessary to ensure that the Debtor's assets are sold at going concern values and that the value of the Spring 2021 orders and customer and vendor relationships are preserved for the benefit of the Debtor's creditors.

14.     Indeed, the alternative to the process described herein is (i) the immediate shutdown of the Debtor's business and liquidation of its remaining inventory, (ii) the deterioration of purchase price contemplated in the Stalking Horse APA, and (iii) the elimination of the cash fund proposed for unsecured creditors, which is needed only to preserve vendor relationships necessary to the continuation of the Debtor's business as a going concern..

## THE PROPOSED STALKING HORSE TRANSACTION

15.     The following is a summary of the principal terms of the Stalking Horse APA, attached hereto as **Exhibit C**:

---

[3] The principal amount of the Limited Recourse Loan is a contingent obligation and is disputed.

a. <u>Purchase Price</u>: In consideration for the Purchased Assets, the purchase price shall be $175,000 (the "**Stalking Horse Offer**").

b. <u>Purchased Assets</u>: Subject to the terms and conditions set forth in the APA, JS Brands will purchase all of the rights, properties and assets (of any description, kind or nature whatsoever, tangible or intangible, however denominated and wherever located) that are used, held for use or useable in connection with, or otherwise related to, the Business, as more particularly described in Section 2.1(a) of the Stalking Horse APA.

c. <u>Assumed Liabilities</u>: JS Brands will assume that certain trademark license agreement dated as of July 19, 2013, as amended and assigned to S&S IP Holdings Limited pursuant to that certain trademark assignment, dated as of September 4, 2014, and the Accrued Royalties owed pursuant to that agreement, except only in an amount not to exceed $400,000.00.

**PROPOSED BIDDING PROCEDURES, BID PROTECTIONS,
AUCTION, AND OVERBID PROCEDURES**

**A. Overview**

16.     In connection with the Proposed Sale, the Debtor seeks approval of the Bidding Procedures, which the Debtor submits are designed to maximize the value of the Purchased Assets.[4]

17.     This process includes the solicitation of offers for the Purchased Assets through a bid submission process described more fully below.

18.     The Debtor proposes that potential bidders (each, a "**Potential Bidder**") for the Purchased Assets submit a bid (each, a "**Bid**") and be governed by the following bidding procedures (the "**Bidding Procedures**"):[5]

a. <u>Bid Deadline</u>: Any person or entity interested in participating in the Auction shall submit a Bid in writing and transmit such bid to the Debtor's counsel, Kudman Trachten Aloe Posner LLP, 800 Third Avenue, 11th Floor, New York, New York 10022 (Attn: Paul H. Aloe and David N. Saponara), so that it is received by no later than **November 23, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Bid Deadline**").

---

[4] Throughout the sale process, as necessary or appropriate, the Debtor will consult with MFG's counsel, the Subchapter V Trustee, and the Office of the United States Trustee (together, the "**Consultation Parties**").

[5] To the extent that there are any discrepancies between this summary and the Bidding Procedures Order, the terms of the Bidding Procedures Order shall govern. Further, unless otherwise defined herein, capitalized terms defined in these Bidding Procedures shall have the meaning ascribed to them in the Bidding Procedures Order.

The Debtor may, after consulting with the Consultation Parties, extend the Bid Deadline in its reasonable business judgment.

b.  Diligence: To be eligible to participate in the Auction, each Potential Bidder must execute a nondisclosure agreement in form and on terms satisfactory to the Debtor. In addition, each Potential Bidder must demonstrate financial wherewithal to complete a transaction for the Purchased Assets by providing to the Debtor: (a) financial statements for the last two calendar years and (b) a letter from a bank or other financial institution that indicates cash liquidity or credit availability of at least the amount of its Bid.

c.  Qualified Bid Requirements: To constitute a qualified bid (each a "**Qualified Bid**"), a Potential Bidder must submit a Bid by the Bid Deadline, and the Debtor, in consultation with the Consultation Parties, must determine that the Offer satisfies the following requirements:

    i.  Modified APA: Each Bid must include: (i) an executed copy of an asset purchase agreement which is not materially more burdensome to the Debtor than the Stalking Horse APA or inconsistent with these Bidding Procedures (each a "**Modified APA**"); and (ii) a marked-up copy of the Modified APA reflecting the differences between the Modified APA and the Stalking Horse APA. The Debtor, in consultation with the Consultation Parties, shall determine whether any Modified APA that modifies the Stalking Horse APA in any respect beyond the identity of the purchaser and the purchase price under the Modified APA results in such Bid being materially less favorable to the Debtor's estates, which may be considered in the Debtor's deliberations as to what constitutes the highest and best offer.

    ii.  Modified Sale Order: Each Offer must include a marked-up copy of the Sale Order (each a "**Modified Sale Order**") reflecting the differences between the proposed Sale Order, annexed hereto as **Exhibit D**, and the Modified Sale Order as requested by the party submitting the Bid. The Debtor, in consultation with the Consultation Parties, shall determine whether any Modified Sale Order that modifies the proposed Sale Order in any respect beyond the identity of the purchaser and the purchase price results in such Bid being materially less favorable to the Debtor's estate, which may be considered in the Debtor's deliberations as to what constitutes the highest and best offer.

    iii.  Bidding Requirements: A Bid for the Purchased Assets shall not be less than $200,000 (the sum of the Stalking Horse Offer ($175,000) plus the maximum Expenses Reimbursement ($25,000) (the "**Initial Overbid Amount**")).

    iv.  Identification of Bidder: Each Bid must fully disclose the legal identity of each entity that will be bidding for the Purchased Assets and participating in connection with such Bid (including but not limited to any equity holder or other financial backer if the Potential Bidder is an entity specifically formed for purposes of effectuating the Proposed Sale, and the complete terms of any such participation) and must also disclose any connections or agreements with the Debtor, any other

known Potential Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

v.   <u>Financial Information</u>: Any Potential Bidder that wishes to submit a Bid for the Purchased Assets must provide the Debtor with sufficient and adequate information to demonstrate, to the satisfaction of the Debtor, in consultation with the Consultation Parties, that the Bid: (i) is being made by an entity that has the financial wherewithal and ability to consummate the Bid, and (ii) provides information to demonstrate that it is able to fulfill all obligations in connection with all Assigned Contracts so as to satisfy the requirement of providing adequate assurance of future performance, as contemplated by section 365 of the Bankruptcy Code (the "**Adequate Assurance Information**").

vi.   <u>Other Requirements</u>: Each Bid shall: (i) state that Bid is formal, binding, and unconditional, is not subject to further due diligence, and is irrevocable until the earlier to occur of: (x) the first business day following the closing of the Proposed Sale or (y) thirty (30) days following the last date of the Auction (as the same may be adjourned); (ii) not contain any financing or employment-related contingencies of any kind; (iii) not contain any condition to closing the Proposed Sale on the receipt of any third party approvals that were not required by the Stalking Horse APA; (iv) state that the Potential Bidder is ready, willing and able to perform its obligations under the Modified APA submitted with such Bid; (v) expressly state that the Potential Bidder agrees to serve as a backup bidder (each a "**Backup Bidder**") if such bidder's Qualified Bid is selected as the next highest or next best bid after the Winning Bid for the Assets; (vi) include contact information for the person(s) the Debtor should contact with questions about the Potential Bidder's Bid; and (vii) be received by the Debtor and the Consultation Parties by the Bid Deadline.

vii.  <u>Good Faith Deposit</u>: All Qualified Bids must be accompanied by a good faith deposit in the amount of ten percent (10%) of the Offer (a "**Good Faith Deposit**"), in the form of a certified or cashier's check, payable to "Kudman Trachten Aloe Posner LLP, as Attorneys," or by wire transfer, instructions for which will be provided upon request. All such deposits shall be retained by the Debtor pending the hearing to consider the Sale Motion and shall be returned within ten (10) days after entry of a Sale Order, except that the Debtor will hold the deposit of the Backup Bidder, until the earlier of (i) the first business day following closing of the Proposed Sale or (ii) thirty (30) days following the last date of the Auction (as the same may be adjourned), provided that any Potential Bidder submitting a credit bid component pursuant to section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit on account of such component of the Potential Bidder's Bid.

d.   <u>Selecting Qualified Bidders</u>: The Debtor shall, in consultation with the Consultation Parties, make a determination whether a Bid is a Qualified Bid and shall notify each Potential Bidder whether its Bid has qualified as a Qualified Bid by no later than **November 24, 2020, at 4:00 p.m.** (prevailing Eastern Time). Any Potential Bidder

whose Offer is determined to be a Qualified Bid shall be designated as a "Qualified Bidder." If a Bid is submitted prior to the Bid Deadline that is determined to not be a Qualified Bid, the Debtor will promptly advise the Potential Bidder of the deficiencies, if any, and allow such Potential Bidder one (1) day to submit a revised offer. In addition, if the Debtor, after consulting with the Consultation Parties and after providing notice to the Notice Parties, determines to extend the Bid Deadline, the Debtor shall be required to notify Prospective Bidders whether their bids have qualified as Qualified Bids by no later than two (2) business days after the newly-scheduled Bid Deadline.

JS Brands shall automatically be deemed a Qualified Bidder, and JS Brands' bid, as reflected in the Stalking Horse APA, is deemed to be a Qualified Bid.

e.   Bid Protections: As set forth in Section 11.2(c) of the Stalking Horse APA, in the event the Stalking Horse APA is terminated because the Court approves a sale of any of the Purchased Assets to a party or parties other than JS Brands, the Debtor shall pay JS Brands reimbursement of all of JS Brands' documented, out of pocket costs and expenses (including financing fees, loan commitment fees, third party fees, legal fees and expenses, travel costs, and other out of pocket expenses) reasonably incurred in connection with the transactions contemplated hereby, in an aggregate amount not to exceed $25,000.00 (the "**Expense Reimbursement**") to protect JS Brands from suffering losses in connection with its being the "stalking horse" bidder for the Purchased Assets.

f.   Credit Bidding: Any secured creditor, including MFG, holding an allowed secured claim against the Debtor shall have the right, subject to the provisions of the Bankruptcy Code, applicable law, and any agreement of such secured creditor, to credit bid such claims to the extent of such secured party's interest in or lien on the Purchased Assets.

g.   The Auction: If the Debtor receives at least two (2) Qualified Bids for the Purchased Assets, the Debtor shall conduct an auction (the "**Auction**"). The Auction, if required, shall be held at the offices of Kudman Trachten Aloe Posner LLP, 800 Third Avenue, 11th Floor, New York, New York 10022, or at such alternative location as the Debtor may determine, after consultation with the Consultation Parties and after providing notice to the Notice Parties. The Auction shall commence on **November 30, 2020, at 10:00 a.m.** (prevailing Eastern Time). The Auction shall be conducted openly and shall be transcribed by a court reporter.

Only Qualified Bidders and their representatives, the Debtor and its representatives, and the Consultation Parties and their respective representatives will be permitted to attend the Auction. The following procedures will be applicable at the Auction:

i.   Each Qualified Bidder shall appear in person at the Auction through a duly authorized representative. Only Qualified Bidders shall be entitled to make any subsequent bids at the Auction. Each Qualified Bidder shall be required to confirm that (i) it has not engaged in any collusion with respect to the bidding or the

Proposed Sale; and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets if such bid if selected as the Winning Bidder.

ii.  Procedures for Conducting Auction. At the commencement of the Auction, the Debtor, after consultation with the Consultation Parties, shall announce the highest Bid received for the Purchased Assets. Such highest sealed bid shall constitute the baseline bid (the "**Baseline Bid**") for the Auction. The Qualified Bidder(s) submitting the Baseline Bid shall not be required to bid in the first round of the Auction. Qualified Bidders other than the Qualified Bidder that submitted the Baseline Bid shall be invited to top the Baseline Bid. Any bid to top the Baseline Bid shall be not less than the Initial Overbid Amount, and each successive bid shall be in an increment not less than $10,000, provided, however, that the Debtor may, after consultation with the Consultation Parties, increase or decrease the bid increments. Except with respect to the Qualified Bidder that submitted the Baseline Bid, subsequent bidding shall be made by other Qualified Bidders in the order in which such Qualified Bids were received, which shall be announced at the commencement of the Auction. Any Qualified Bidder that declines to top the Baseline Bid shall be excluded from further bidding. Bidding shall proceed in successive rounds until each Qualified Bidder not previously excluded from bidding declines to top the last bid.

iii.  Winning Bid: Immediately prior to the conclusion of the Auction, the Debtor shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which bid constitutes the winning bid (the "**Winning Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity or identities of the bidder(s) that submitted the Winning Bid (the "**Winning Bidder**") and the amount of the purchase price and other material terms of the Winning Bid.

iv.  The Auction may include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids at the Auction to improve their bids. The Debtor may, in its reasonable business judgment, after consultation with the Consultation Parties, negotiate with any and all Qualified Bidders during the Auction.

v.  The Debtor shall have the right, after consulting with the Consultation Parties, to determine, in its reasonable business judgment, which bid or combination of bids constitutes the highest or otherwise best bid and reject at any time, any bid that the Debtor determines to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, Bankruptcy Rules, or the Local Rules, these Bidding Procedures, any order of the Bankruptcy Court, or is not in the best interests of the Debtor and its estate.

vi.  Within one (1) business day after conclusion of the Auction, the Winning Bidder shall be required to supplement its Good Faith Deposit by the difference between its Qualified Bid and the Winning Bid times ten percent (10%).

vii.  Backup Bid: Immediately prior to the conclusion of the Auction, the Debtor shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which bid constitutes the backup bid (the "**Backup Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity or identities of the bidder(s) that submitted the Backup Bid (each such bidder, the "**Backup Bidder**") and the amount of the purchase price and other material terms of the Backup Bid. Backup Bids shall be open and irrevocable until the earlier of (i) the first business day following closing of the Proposed Sale or (ii) thirty (30) days following the last date of the Auction (as the same may be adjourned). If the Winning Bidder fails to consummate a Proposed Sale, the Backup Bidder shall be deemed the new Winning Bidder, and the Debtor will be authorized, but not required, to consummate a Proposed Sale with the Backup Bidder.

viii.  Subject to the terms and conditions set forth in the Stalking Horse APA or Modified APA, in the event that a Winning Bidder fails to consummate the proposed transaction by the Closing Date, such bidder's deposit shall be forfeited to the Debtor as liquidated damages, and the Debtor shall be free to consummate the proposed transaction with the Backup Bidder at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtor may consummate the transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Court.

ix.  Within one (1) business day after conclusion of the Auction, the Backup Bidder shall be required to supplement its Good Faith Deposit by the difference between its Qualified Bid and the Backup Bid multiplied by ten percent (10%).

h.  Modification of Procedures: The Debtor may, after consulting with the Consultation Parties, announce at the Auction modified or additional procedures for conducting the Auction.

i.  Auction Results: Within one (1) business day following the Auction, the Debtor will cause the results of the Auction to be filed with the Court, by docketing the same on the Court's electronic case filing ("**ECF**") system.

j.  Bankruptcy Court Approval: All bids for the purchase of the Purchased Assets shall be subject to approval of the Court and conditioned upon entry of a Sale Order.

k.  Sale Objection: Objections to the Proposed Sale (each, a "**Sale Objection**"), including any objection to the sale of the Assets free and clear of liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code and entry of any Sale Order (other than Adequate Assurance Objections and Cure Objections), must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and (iii) be filed with the Court and served on: (a) the Debtor's counsel, Kudman Trachten Aloe Posner LLP, 800 Third Avenue, 11th Floor, New York, New York 10022 (Attn: Paul H. Aloe and David N. Saponara); and (b) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Andrea B. Schwartz) (the foregoing parties, the "**Objection**

**Recipients**") by **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Sale Objection Deadline**"). Any reply by the Objection Recipients shall be filed and served by no later than **December 11, 2020, at 4:00 p.m.** (prevailing Eastern Time).

l.      All Sale Objections not otherwise resolved by the parties prior thereto shall be heard at the Sale Hearing. The failure of any party to timely file with the Court and serve on the Objection Recipients a Sale Objection by the Sale Objection Deadline forever shall be barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Sale Motion, or to the consummation and performance of the applicable Proposed Sale contemplated by an applicable Modified APA with a Winning Bidder, including the transfer of the Assets to the applicable Winning Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

19.      The Debtor submits that the Bidding Procedures are fair and reasonable and request that they be approved.

**B.  Key Dates and Deadlines**

20.      Consistent with the Guidelines for the Conduct of Asset Sales established by the Bankruptcy Court for the Southern District of New York, the Debtor proposes the following key dates and deadlines for the Proposed Sale:

| Deadline | Event |
|---|---|
| November 5, 2020, at 10:00 a.m. | Hearing on Bidding Procedures |
| November 6, 2020 | Deadline to mail Bidding Procedures Notice and Sale Motion |
| November 23, 2020, at 4:00 p.m. | Bid Deadline |
| November 24, 2020, at 4:00 p.m. | Deadline for the Debtor to notify Potential Bidders of their status as Qualified Bidders and whether Auction will occur |
| November 30, 2020, at 10:00 a.m. | Auction (if necessary) |
| December 4, 2020, at 4:00 p.m. | Sale Objection Deadline, Cure Objection Deadline, and Adequate Assurance Objections Deadline |
| December 11, 2020, at 4:00 p.m. | Deadline for the Debtor to file Replies to Sale Objections, Cure Objections, and Adequate Assurance Objections |
| December 12, 2020, at 10:00 a.m. | Sale Hearing |
| December 13, 2020 | Closing (**time of the essence)** |

**C.  Extraordinary Provisions in Connection with Proposed Sale**

21.     Pursuant to Local Bankruptcy Rule 6004-1(j) and the Court's Guidelines for the Conduct of Asset Sales, the Court is asked to take notice of the following "extraordinary provisions" of the Proposed Sale:

    a.  Sale to Insider: JS Brands is an insider of the Debtor. To ensure the fairness of the sale process and the proposed transaction, the Debtor has proposed the Bidding Procedures, which subject the Stalking Horse Offer by JS Brands to higher or better offers in an open, competitive bidding process, including a public Auction provided that at least two (2) Qualified Bids are received.

**D.  Notice**

22.     The Debtor proposes that, within three (3) business days of entry of the Bidding Procedures Order, the Debtor shall serve a copy of this Sale Motion, the Bidding Procedures Order, the Bidding Procedures Notice, and Potential Assigned Contracts Notice upon the following persons by first-class mail, postage prepaid: (a) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Andrea B. Schwartz); (b) all parties who have made an offer on some or all of the Purchased Assets or expressed an interest in making an offer on the Purchased Assets; (c) all known persons holding a lien on any of the Purchased Assets; (d) all known creditors; and (e) all entities who have requested notice under Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

23.     The Debtor submits that the foregoing notice is sufficient to provide effective notice of the Bidding Procedures, the Auction, and the Proposed Sale to potentially interested parties in a manner designed to maximize the chance of obtaining the broadest possible participation in the Auction, while minimizing the administrative costs to the Debtor's estate.

## ASSUMPTION AND ASSIGNMENT OF ASSIGNED CONTRACTS

24.     In connection with the Proposed Sale, the Debtor may seek authority under section 365 of the Bankruptcy Code to (a) assume and assign certain contracts on behalf of the Sellers (the

"**Potentially Assigned Contracts**"), and (b) execute and deliver to the Winning Bidder, as the case may be, such documents or other instruments as may be necessary to assign and transfer the applicable Potentially Assigned Contracts.

25.     The Debtor believes that, except for the Accrued Royalties owed to S&S IP Holdings Limited pursuant to trademark license agreement, there will be no material cure amounts associated with the Potentially Assigned Contracts; however, the Debtor seeks to implement the following Assumption and Assignment Procedures (the "**Assumption and Assignment Procedures**") in order to facilitate an orderly assignment process:

    a.  Notice of Potential Assumption and Assignment: Within three (3) business days after the entry of the Bidding Procedures Order, the Debtor will serve on the Notice Parties, including each Counterparty to the Potentially Assigned Contracts, the Potential Assigned Contract Notice, substantially in the form attached hereto as **Exhibit E**, which shall (i) identify all of the Potentially Assigned Contracts; (ii) list the Debtor's good faith calculation of the cure costs with respect to each Potentially Assigned Contract; (iii) expressly state that assumption and assignment of the Potentially Assigned Contract is subject to Court approval; and (iv) prominently display the deadline to file objections to the assumption and assignment of the Assigned Contracts (the "**Potential Assigned Contract Notice**");

    b.  Cure Objections:

        i.  Cure Objection Deadline: Any Counterparty to a Potentially Assigned Contract that wishes to object to the proposed assumption and assignment of the Potentially Assigned Contract, the subject of which objection is the Debtor's proposed costs to cure any outstanding monetary defaults then existing ("**Cure Costs**") under such contract (each, a "**Cure Objection**"), shall file with the Court and serve on the Objection Recipients its Cure Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Cure Objection Deadline**"). Replies, if any, to Cure Objection shall be filed by **December 11, at 4:00 p.m.** (prevailing Eastern Time).

        ii.  Resolution of Cure Objections: The Debtor and a Counterparty that has filed a Cure Objection shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined by the Court at the Sale Hearing. The Court shall make all necessary determinations relating to the

applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph.

iii.  Adjourned Cure Objections: If a timely Cure Objection cannot otherwise be resolved by the parties, such objection shall be heard at the Sale Hearing; provided that, a Cure Objection (and only a Cure Objection) may, at the Debtor's discretion, after consulting with the Consultation Parties and the Winning Bidder, be adjourned with the Court's consent (an "**Adjourned Cure Objection**") to a subsequent hearing. An Adjourned Cure Objection may be resolved after the closing date of the applicable Proposed Sale (and therefore the contract of the Counterparty in question may be assumed and assigned at Closing); provided that the Debtor maintains a cash reserve equal to the Cure Costs the objecting Counterparty believes is required to cure the asserted monetary default under the affected Potentially Assigned Contract.

iv.  Failure to Timely File Cure Objection: If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty shall be deemed to have consented to the assumption and assignment of the Potentially Assigned Contract (unless such Counterparty has timely filed an Adequate Assurance Objection with respect to the Assigned Contract) to the applicable Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment. Further, in the event no objections are timely filed and served, the Cure Costs set forth in the Potential Assigned Contract Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Potentially Assigned Contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any Potentially Assigned Contract, or any other document, and the Counterparty to the Potentially Assigned Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such Potentially Assigned Contract against the Debtor or any Winning Bidder(s), or the property of any of them.

c.  Adequate Assurances Objections:

i.  Adequate Assurance Information: The Debtor shall provide, with respect to JS Brands and each Qualified Bidder, the Adequate Assurance Information. The Debtor shall: (a) within 48 hours of receipt of an Offer from a Potential Bidder other than JS Brands, and (b) with respect to JS Brands, by no later than **November 24, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Adequate Assurance Deadline**") provide a copy of the Adequate Assurance Information to those Counterparties (or their counsel) who have (x) submitted a written request (e-mail to the Debtor's counsel is acceptable) for Adequate Assurance Information and (y) confirmed in writing to the Debtor's counsel (e-mail to the Debtor's counsel is acceptable) their agreement to keep such Adequate Assurance Information strictly confidential and use it solely for the purpose of evaluating whether a Potential Bidder, including JS Brands, has provided adequate assurance of future performance under the affected Assigned Contracts.

14

    ii.   <u>Adequate Assurance Objection Deadline</u>: Any Counterparty to a Potentially Assigned Contract that wishes to object to the proposed assumption and assignment of a Potentially Assigned Contract, the subject of which objection is a Winning Bidder's proposed form of adequate assurance of future performance with respect to such contract (each, an "**Adequate Assurance Objection**") shall file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including submitting any appropriate documentation in support thereof, by **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Adequate Assurance Objection Deadline**"). Replies, if any, to Adequate Assurance Objections shall be filed by **December 11, 2020 at 4:00 p.m.** (prevailing Eastern Time).

    iii.   <u>Resolution of Adequate Assurance Objections</u>: The Debtor and a Counterparty that has filed an Adequate Assurance Objection shall first confer in a good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance by the applicable Winning Bidder shall be determined by the Court at the Sale Hearing.

    iv.   <u>Failure to File Timely Adequate Assurance Objection</u>: If a Counterparty fails to timely file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Potentially Assigned Contract (unless the Counterparty has filed a timely Cure Objection with respect to the Potentially Assigned Contract) to the applicable Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption, assignment, and sale. Further, in the event no objections are filed and served, the applicable Winning Bidder shall be deemed to have provided adequate assurance of future performance with respect to the affected Assigned Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code, notwithstanding anything to the contrary in the Potentially Assigned Contract, or any other document.

d.   <u>Other Sale Objections by Counterparties</u>:

    i.   <u>Objection Deadline</u>: Any Counterparty to a Potentially Assigned Contract that wishes to file a Sale Objection (other than a Cure Objection or an Adequate Assurance Objection) to the proposed assumption and assignment of a Potentially Assigned Contract shall file with the Court and serve on the Objection Recipients its Sale Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than the Sale Objection Deadline of **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time). Replies, if any, to Sale Objections shall be filed by **December 11, 2020, at 4:00 p.m.** (prevailing Eastern Time).

    ii.   <u>Failure of Counterparties to File Timely Sale Objection</u>: If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Sale Objection,

the Counterparty shall be deemed to have consented to the assumption and assignment of the Potentially Assigned Contract (unless the Counterparty has filed a timely Cure Objection or Adequate Assurance Objection with respect to the Potentially Assigned Contract) to the applicable Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption, assignment, and sale.

iii.   <u>Reservation of Rights</u>. The inclusion of a Potentially Assigned Contract or Cure Costs on the Potential Assigned Contracts Notice shall not constitute or be deemed a determination or admission by the Debtor, the applicable Winning Bidder(s), or any other party in interest that such contract or other document is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Costs are due (all rights with respect thereto being expressly reserved). The Debtor and JS Brands reserve all of their rights, claims, and causes of action with respect to each Potentially Assigned Contract or other document listed on the Potential Assigned Contracts Notice. The Debtor's inclusion of any Potentially Assigned Contract on the Potential Assigned Contracts Notice shall not be a covenant, promise, or guarantee that such contract ultimately will be assumed and assigned. The Potential Assigned Contracts Notice shall be without prejudice to the Winning Bidder's rights (whether JS Brands or otherwise), if any, under the applicable asset purchase agreement, to subsequently exclude any Potentially Assigned Contracts from the assumption or assignment prior to the closing of the Proposed Sale, pursuant to the terms of the APA or Modified APA.

26.   The Debtor submits that the foregoing Assumption and Assignment Procedures and deadlines are fair and reasonable and will provide sufficient notice to the non-Debtor Counterparties to the Potentially Assigned Contracts.

## **RELIEF REQUESTED**

### A.  The Proposed Sale is Within the Debtor's Sound Business Judgment and Notice is Good and Sufficient

27.   The Debtor submits that sufficient authority exists for approval of the Proposed Sale. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

28.   In applying this provision, courts in this and other districts have required that the sale of a debtor's assets be based upon the sound business judgment of the debtor. *See, e.g.*, *Official*

*Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143-145 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

29.    In *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), one of the seminal and most widely followed cases dealing with asset sales, the Second Circuit held that the factors to be considered in determining whether a sound business reason exists include the following:

> [T]he proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, *most importantly perhaps, whether the asset is increasing or decreasing in value.*

*Id.* At 1071 (emphasis added).

30.    The *Lionel* decision has been widely accepted and applied by various courts considering a debtor's request to sell assets, including requests to approve a sale of certain of the assets of a debtor's estate. *See, e.g.*, *In re the Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re Eng'g Prod. Co.*, 121 B.R. 246 (Bankr. E.D. Wis. 1990); *In re Thomson McKinnon Sec., Inc.*, 120 B.R. 301 (Bankr. S.D.N.Y. 1990); *In re Channel One Communications, Inc.*, 117 B.R. 493 (Bankr. E.D. Mo. 1990); *In re Brethren Care*, 98 B.R. 927 (Bankr. N.D. Ind. 1989).

31.    Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether: (i) the debtor has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. *See Polvay v. B.O. Acquisitions, Inc. (In re Betty Owens Sch., Inc.)*, No. 96 Civ. 3576 (PKL), 1997 WL 188127, at *4 (S.D.N.Y. Apr. 17, 1997); *In re Del. & Hudson Ry.*

*Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002).

32.    Fair and accurate notice should inform all interested parties of the liquidation of the debtor's business; disclose accurately the terms of the sale; explain the effect of the sale upon the debtor's business; and explain why the sale is in the best interests of the debtor's estate. *In re Delaware & Hudson Ry.*, 124 B.R. at 180; *In re Naron & Wagner, Chartered*, 88 B.R. 85, 88 (Bankr. D. Md. 1988).

33.    The Proposed Sale provides the Debtor with an opportunity to maximize the value of the Purchased Assets. The purchase price for the Purchased Assets under the Stalking Horse APA is $175,000. The Debtor believes that the Purchase Price for the Transferred Asserts represents the highest and/or best value available for the Purchased Assets, particularly in light of the limited market for the assets and the ongoing COVID-19 pandemic. Further, the Stalking Horse APA is subject to higher and better offers, thereby ensuring that the best possible offers have been or will be received.

34.    Moreover, the Debtor submits that the notice provisions previously described herein will ensure that full and fair disclosure, as well as the opportunity to object, will be afforded to all creditors and parties in interest.

35.    For these reasons, the Debtor submits that the Proposed Sale meets the requirements of Section 363(b) of the Bankruptcy Code.

**B.  Sale Free and Clear of Liens, Claims, Encumbrances, and Interests**

36.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property of the estate:

> free and clear of any interest in such property of an entity other than the estate if (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest, (2) such entity consents, (3) such interest is a lien and the price at

which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute, or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

37.     The Debtor submits that the Proposed Sale, along with the Bidding Procedures related thereto, meets the test set forth in section 363(f)(2), in that the liens of MFG against certain of the Purchased Assets will attach to the net proceeds from the Proposed Sale with the same validity, enforceability, priority, force, and effect that they now have as against the Purchased Assets.

38.     Accordingly, the Debtor submits that the Proposed Sale, free and clear of all liens, claims, encumbrances, and interests, meets the requirements of Section 363(f) of the Bankruptcy Code.

**C. Protections as a Good Faith Purchaser**

39.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from a debtor in the event that the sale conducted under section 363(b) of the Bankruptcy Code is later reversed or modified on appeal. Specifically, section 363(m) provides:

the reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

40.     Section 363(m) of the Bankruptcy Code "affords 'finality to judgment by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids.'" *Reloeb Co. v. LTV Corp. (In re Chateaugay Corp.)*, No. 92 Civ. 7054 (PKL), 1993 WL 159969, at *3 (S.D.N.Y. May 10, 1993) (quoting *Anheuser-Busch, Inc. v.*

*Miller (In re Stadium Mgmt. Corp.)*, 895 F.2d 845, 847 (1st Cir. 1990)); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

41.     The Second Circuit has indicated that, generally, a party would have to show fraud or collusion between the buyer and the debtors-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *see also In re Angelika Films 57th, Inc.*, Nos. 97 Civ. 2239 (MBM), 97 Civ. 2241 (MBM), 1997 WL 283412, at *7 (S.D.N.Y. 1997) (same; holding that purchaser's status as an insider was not per se bad faith).

42.     Here, the Debtor submits that JS Brands has engaged in the sale process in good faith as part of an arm's length transaction negotiated between its independent professionals and the Debtor's professionals.

43.     Moreover, by exposing the Purchased Assets to the market through the Auction, the Debtor submits that the consideration to be received for the Purchased Assets is fair and reasonable.

44.     For these reasons, the Debtor requests a finding that JS Brands is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

### D.  The Bidding Procedures are Fair and Reasonable and Are in the Best Interests of the Debtor's Estate and Creditors

45.     In order to maximize the value of the Purchased Assets for the benefit of the Debtor's estate, creditors, and other parties in interest, the Debtor seeks to implement a competitive bidding process for the Purchased Assets that is designed to generate a maximum recovery. The Debtor believes that the Auction and proposed Bidding Procedures will encourage participation by financially capable bidders. Furthermore, the Bidding Procedures are consistent with other procedures previously approved by this and other courts and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See, e.g.*, *In re Kmart*, Case No. 02-B02474 (SPS) (Bankr. N.D. 111 May 10, 2002); *In re Global Crossing*, Case No. 02-40188 (S.D.N.Y. March 25, 2002) (REG); *In re Randall's Island Family Golf Ctrs., Inc.*, 261 B.R. 96 (S.D.N.Y. 2001); *In re Integrated Resources, Inc.*, 147 B.R. 650 (S.D.N.Y. 1992).

46.     Further, bidding incentives, such as the Bidding Protections, encourage a potential purchaser to invest the required time, money, and effort to conduct due diligence and sale negotiations with a debtor despite the inherent risks and uncertainties of the chapter 11 process. *See, e.g.*, *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (finding bidding incentives may be "legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted); *In re Marrose Corp.*, Nos. 89 B 12171-12179 (CB), 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (stating that "[a]greements to provide breakup fees or reimbursement of fees and expenses are

meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers").

47.    Additionally, the Debtor submits that the Bidding Protections are a normal and necessary component of sales outside the ordinary course of business under section 363 of the Bankruptcy Code. *See e.g.*, *In re Kmart*, Case No. 02 B02474 (SPS) (Bankr. N.D. Ill. May 10, 2002) (authorizing a termination fee and bid protections for potential bidders); *In re Comdisco, Inc.*, Case No. 01 24795 (RB) (Bankr. N.D. Ill. Aug. 9, 2002) (approving a termination fee as, inter alia, an actual and necessary cost and expense of preserving the Debtors' estates, of substantial benefit to the Debtors' estates, and a necessary inducement for, and a condition to, the proposed purchaser's entry into the Asset Purchase Agreement); *In re Integrated Resources, Inc.*, 147 B.R. at 660 (noting that breakup fees may be legitimately necessary to convince a "white knight" to offer an initial bid by providing some form of compensation for the expenses such bidder incurs, and the risks such bidder faces by having its offer held open, subject to higher and better offers); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877 (Bankr. S.D.N.Y. 1990) (approving an overbid requirement in an amount equal to the approved breakup fee); *In re Kupp Acquisition Corp.*, Case No. 96 1223 (PJW) (Bankr. D. Del. March 3, 1997).

48.    Here, the Expense Reimbursement is limited to JS Brands' actual out-of-pocket expenses in connection with the Stalking Horse APA and is capped at $25,000. As a result, it is well within is within the range of fees typically paid in other significant sales transactions that have been consummated in a bankruptcy setting. *See e.g.*, *Consumer News & Bus. Channel P'ship v. Financial News Network, Inc. (In re Financial News Network, Inc.)*, 980 F.2d 165, 167 (2d Cir. 1992) (noting that transaction at issue provided for a $8.2 million breakup fee on a $149.3 million

transaction, or 5.5%); *Doehring v. Crown Corp. (In re Crown Corp.)*, 679 F.2d 774 (9th Cir. 1982) (bid protection of 4.9% approved).

49.     For these reasons, the Debtor submits that the Bidding Procedures should be approved.

### E.  Assumption and Assignment of Assigned Contracts

50.     Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). A trustee's decision to assume an executory contract or unexpired lease must be an exercise of sound business judgment for the court to approve the assumption under section 365(a) of the Bankruptcy Code. *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

51.     Further, section 365(k) of the Bankruptcy Code provides that assignment by a debtor to a third-party assignee of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 365(k). Therefore, upon the closing of the Proposed Sale, the Debtor will be relieved of its obligations under the Potentially Assigned Contracts, thereby further decreasing the obligations of the estate and creating value for creditors.

52.     Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under executory contracts that will be assumed must be cured or that adequate assurance be provided to the counterparties that such defaults will be promptly cured.

53.     In addition, pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C.

§ 365(f)(2)(B). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr D.N.J. 1988) (internal citations omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (holding that adequate assurance of future performance does not mean absolute assurance that debtors will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance when prospective assignee of lease had financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; in the leasing context, chief consideration with respect to adequate assurance is whether rent will be paid).

54.    To the extent that defaults exist under the Potentially Assigned Contracts, the Winning Bidder (whether JS Brands or otherwise) will cure or provide adequate assurance of cure of such defaults within the meaning of section 365(b)(1)(A) of the Bankruptcy Code.

55.    Further, the Debtor will be prepared to present evidence to demonstrate the Winning Bidder's (whether JS Brands or otherwise) financial credibility, experience in the industry, and willingness and ability to perform under the Potentially Assigned Contracts. Therefore, the Sale Hearing will provide the Court and other interested parties with an opportunity to evaluate and, if necessary, challenge the ability of the Winning Bidder to provide adequate assurance of future performance under the Potentially Assigned Contracts.

56.     For these reasons, the Debtor submits that it meets all the requirements of section 365 of the Bankruptcy Code necessary to assume and assign the Potentially Assigned Contracts.

**F.  Request for Relief Pursuant to Bankruptcy Rules 6004(h) and 6006(d)**

57.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6006(d).

58.     To preserve the value of the assets and limit the costs of administering and preserving the assets, it is very important that the Debtor close on the Proposed Sale as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtor requests that the Court waive the stay periods under Bankruptcy Rules 6004(g) and 6006(d).

## NOTICE

59.     Notice of this Sale Motion will be given in accordance with the notice procedures set forth herein. The Debtor submits that such notice is sufficient and requests that his Court find that no other or further notice is necessary.

## NO PRIOR REQUEST

60.     No previous request for the relief sough herein has been made by the Debtor to this or any other court.

**WHEREFORE**, for all the forgoing reasons, the Debtor respectfully requests that this Court enter orders, substantially in the form annexed hereto, granting the Sale Motion and such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 29, 2020

By:      */s/ Paul H. Aloe*
Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
800 Third Avenue, 11th Floor
New York, New York 10022
Tel: (212) 868-1010
Fax: (212) 868-0013
Email:  paloe@kudmanlaw.com
        dsaponara@kudmanlaw.com

*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BRANDED APPAREL GROUP LLC,[1] | Case No. 20-12552-scc |
| Debtor. | (Subchapter V) |

**ORDER ESTABLISHING BIDDING PROCEDURES AND RELATED RELIEF**
**REGARDING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**
**FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

Upon the motion (the "**Motion**")[2] of Branded Apparel Group LLC (the "**Debtor**"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, for entry of an order (a) establishing bidding procedures and bid protections, including an auction, as set forth herein (the "**Bidding Procedures**"), with respect to the sale of substantially all of the Debtor's assets free and clear of liens, claims, interests, and encumbrances; (b) approving the form and manner of notices thereof (the "**Bidding Procedures Notice**"); (c) establishing JS Brands LLC ("**JS Brands**" or "**Stalking Horse**") as the stalking horse bidder for the Debtor's assets; (d) approving the form of Asset Purchase Agreement by and among the Debtor and JS Brands (the "**Stalking Horse APA**"), pursuant to which the Debtor proposes to sell substantially all of its assets to JS Brands or a third party or parties that make higher and/or better offer(s) for those assets (the "**Proposed Sale**"); and (e) setting a hearing (the "**Sale Hearing**") to consider approval of the Proposed Sale; and it appearing that the Debtor has provided good and sufficient notice to interested parties of the Motion, as evidenced by the proof of service filed on [_____], 2020; and it further appearing that this Court has jurisdiction to grant the requested relief pursuant to 28 U.S.C. §§ 157

---

[1] The last four digits of the Debtor's federal tax identification number is 8524. The location of the Debtor's service address is: 141 West 36th Street, 10th Fl., New York, NY 10018.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and 1334; and after considering all objections to the Motion, if any; and the Court having conducted a hearing on November 5, 2020, at which time the Court considered, among other things, the Bidding Procedures, any objections thereto and the oral arguments of counsel; and it further appearing that the relief requested is reasonable and necessary to protect the interests of the Debtor, its estate, and creditors; and after due deliberation, sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:[3]**

A.      The statutory and legal predicates for the relief requested in this Order are sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1 and 6006-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**").

B.      The Debtor has provided good and sufficient notice of the relief granted by this Bidding Procedures Order to all parties in interest. The notice provided is appropriate and is calculated to provide interested parties with timely and proper notice of the Bidding Procedures and the Auction. No further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

C.      The Debtor has engaged in a process with respect to the Purchased Assets to solicit and develop the highest and best offers for the Purchased Assets.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.      The Bidding Procedures attached hereto as Exhibit 1 are fair, reasonable, appropriate and are designed to maximize recovery to the Debtor's estate.

E.      The Debtor has demonstrated compelling and sound business justifications for entering into the Stalking Horse APA and incurring the obligations arising thereunder or in connection therewith, including the provisions related to the Expense Reimbursement.

F.      JS Brands' role as a "stalking-horse" and the Stalking Horse APA as the "stalking horse" sale agreement are in the best interest of the Debtor and the Debtor's estates and reflects a sound exercise of the Debtor's business judgment. The Stalking Horse APA provides the Debtor with the opportunity to sell the Purchased Assets in order to maximize value.

G.      The Bid Protections, including, but not limited to, the Expense Reimbursement, (i) have been negotiated by the Debtor and JS Brands at arm's length and in good faith, (ii) are a material inducement for, and consideration of, JS Brands' execution of the Stalking Horse APA, and (iii) are necessary to ensure that JS Brands will continue to pursue the Stalking Horse APA and the sale transaction contemplated thereby.

H.      The Debtor's authorization to pay the Bidding Protections is an essential inducement and condition relating to JS Brands' entry into, and continuing obligations under, the Stalking Horse APA. The Debtor's commitment to pay the Bidding Protections, which has induced JS Brands to submit its bid that will serve as a minimum or floor bid for the Proposed Sale of the Purchased Assets on which the Debtor can rely, provides a material benefit to the Debtor's estate, its creditors, and other parties in interest by increasing the likelihood that the best possible purchase price for the Purchased Assets will be received.

I.      The Debtor has demonstrated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures, (ii) the Assumption and Assignment Procedures, (iii) the Bid

Protections, including, but not limited to, the Break-Up Fee (to the extent payable under the Stalking Horse APA), and (iv) the form and manner of notice of the Auction and Sale Hearing.

J.       The Bidding Procedures comply with the requirements of Local Rule 6004-1 and the Sale Guidelines. The Bidding Procedures were negotiated in good faith and at arm's length and are reasonably designed to promote participation and active bidding and ensure that the highest or best value is generated for the Purchased Assets.

K.       The Assumption and Assignment Procedures, including notice of proposed Cure Costs, are reasonable and appropriate and consistent with section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures have been tailored to provide adequate opportunity for all Counterparties to the Potentially Assigned Contracts to raise objections, if any.

L.       The Bidding Procedures Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Sale Hearing, and the Proposed Sale, and the objection deadlines related thereto.

**IT IS HEREBY ORDERED THAT:**

**The Bidding Procedures and the Auction**

1.       The Bidding Procedures, attached hereto as Exhibit 1, are hereby approved in all respects, are incorporated herein, and shall apply with respect to any bids for some or all of the Purchased Assets. The Debtor is authorized to take all action necessary or appropriate to implement the Bidding Procedures.

2.       The deadline for submitting a Bid for the Purchased Assets shall be **November 23, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Bid Deadline**"); provided that the Debtor may extend the Bid Deadline for any reason, after consultation with the Consultation Parties.

4

3.      If the Debtor receives at least one (1) Qualified Bid for the Purchased Assets, the Debtor shall conduct an auction (the "**Auction**"). The Auction, if required, shall be held at the offices of Kudman Trachten Aloe Posner LLP, 800 Third Avenue, 11th Floor, New York, New York 10022, or at such alternative location or such other electronic medium as the Debtor may determine, after consultation with the Consultation Parties, and after providing notice to the Notice Parties. The Auction shall commence on **November 30, 2020, at 10:00 a.m.** (prevailing Eastern Time).

4.      The Auction shall be conducted openly and shall be transcribed by a court reporter.

5.      Subject to the Bidding Procedures and this Order, the Debtor shall have the right, after consultation with the Consultation Parties, to: (i) determine which bidders qualify as Qualified Bidders; (ii) determine which bids qualify as Qualified Bids; (iii) determine which Qualified Bids are the Winning Bid and the Backup Bid; (iv) reject any bid that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bidding Procedures, the Bankruptcy Code, the Bidding Procedures Order, or any other order of this Court; or (c) contrary to the best interests of the Debtor and its estate; (v) adjourn or cancel the Auction; or (vi) modify the Bidding Procedures in a manner consistent with applicable law.

6.      All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the Purchased Assets.

7.      Notwithstanding anything to the contrary set forth herein, JS Brands' bid, as reflected in the Stalking Horse APA, is deemed a Qualified Bid pursuant to the Bidding Procedures for all purposes.

## The Bidding Protections

8.       The Expense Reimbursement set forth in Section 11.2(c) of the APA is approved and binding on the Debtor and its estate. The Debtor is authorized and directed to pay the Bidding Protections to the extent incurred and solely in the event of the consummation of a sale with a Winning Bidder other than JS Brands from the first proceeds of such transaction, or as otherwise set forth in the APA, without further order of the Court.

## The Sale Hearing/Objection Deadline

9.       The Court shall conduct the Sale Hearing on **December 12, 2020, at 4:00 p.m.** (prevailing Eastern Time). The Debtor may, after consultation with the Consultation Parties, seek an adjournment of the Sale Hearing as the Debtor deems appropriate in the exercise of its reasonable business judgment.

10.       Responses or objections (collectively, "**Sale Objections**") if any, to the relief requested in the Sale Motion, including Cure Objections and Adequate Assurance Objections, shall be in writing, shall state the name of the objecting party, shall state with particularity the reasons and basis for the Sale Objection, and shall be (a) filed with the Court and (b) served upon: (i) Kudman Trachten Aloe Posner LLP, 800 Third Avenue, 11th Floor, New York, New York 10022 (Attn: Paul H. Aloe and David N. Saponara); and (ii) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Andrea B. Schwartz) (collectively, the "**Objection Recipients**"), so as to be actually received by no later than **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time)  (the "**Sale Objection Deadline**"). Any reply by the Debtor or other Objection Recipient shall be filed and served by no later than **December 11, 2020, at 4:00 p.m.** (prevailing Eastern Time).

**Notice Procedures**

11.    The Bidding Procedures Notice, annexed hereto as Exhibit 2, provides adequate and sufficient notice to all interested parties of the Bidding Procedures, Auction, Motion, Sale Hearing, and the Proposed Sale pursuant to Bankruptcy Rules 2002 and 6004 and Local Rules 4001-1 and 6004-1, and is hereby approved.

12.    As soon as is reasonably practicable, but by no later than three (3) business days after entry of the Bidding Procedures Order, the Debtor shall serve a copy of this Bidding Procedures Order, the Sale Motion, the Bidding Procedures Notice and the Potential Assigned Contract Notice upon the following persons by first-class mail, postage prepaid: (a) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn.: Andrea Schwartz); (b) all Counterparties to the Assigned Contracts; (c) all parties who have made an offer on some or all of the Purchased Assets or expressed an interest in making an offer on some or all of the Purchased Assets; (d) all known persons holding a lien on any of the Purchased Assets; (e) all known creditors and (f) all entities who have requested notice under Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

**The Assumption and Assignment Procedures**

13.    The Potential Assigned Contracts Notice, annexed hereto as Exhibit 3, provides adequate and sufficient notice to any applicable Counterparty of any proposed assumption and/or assignment of any Assigned Contract, and is hereby approved.

14.    The Assumption and Assignment Procedures (as set forth in the Motion) are reasonable, fair, and appropriate, and contain the type of information required under Bankruptcy Rule 2002, Local Rule 2002-1, and comply in all respects with all other applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and are hereby approved.

15.      Within three (3) business days after entry of this Order, the Debtor shall file the Potential Assigned Contracts Notice with the Court and serve the Assigned Contracts Notice on the Notice Parties, including each applicable Counterparty.

16.      Any and all objections to the Cure Amounts (any such objection, a "**Cure Objection**") shall be in writing, shall state with specificity the legal and factual bases thereof and include any appropriate supporting documentation, filed with the Court and shall be simultaneously served on the following Objection Recipients, so as to be actually received by the Objection Recipients by no later than **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Cure Objection Deadline**"). Any reply by the Debtor shall be filed and served by no later than **December 11, 2020, at 4:00 p.m.** (prevailing Eastern Time).

17.      The Debtor and any Counterparty that has filed a Cure Objection shall confer in good faith in an effort to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court shall determine the amount to be paid or reserved with respect to such objection at the Sale Hearing; provided that, a Cure Objection (and only a Cure Objection) may, at the Debtor's discretion, after consulting with the applicable Winning Bidder, be adjourned with the Court's consent (an "**Adjourned Cure Objection**") to a subsequent hearing. An Adjourned Cure Objection may be resolved after the closing date of the applicable Proposed Sale (and therefore the contract of the Counterparty in question may be assumed and assigned at the closing), provided that the Debtor maintains a cash reserve equal to the Cure Costs the objecting Counterparty believes is required to cure the asserted monetary default under the affected Potentially Assigned Contract.

18.     All other Sale Objections to the proposed assumption and assignment of the Debtor's right, title, and interest in, to, and under a Potentially Assigned Contract, if it is ultimately designated for assumption and assignment by the Winning Bidder(s), will be heard at the Sale Hearing.

19.     If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty shall be deemed to have consented to the assumption and assignment of the affected Potentially Assigned Contract (unless such Counterparty has timely filed an Adequate Assurance Objection with respect to the affected Assigned Contract) to the applicable Winning Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale. The Cure Costs set forth in the Potential Assigned Contracts Notice shall be controlling and will be the only amount necessary to cure outstanding monetary defaults under the affected Potentially Assigned Contract under 11 § U.S.C. 365(b), notwithstanding anything to the contrary in any Assigned Contract, or any other document, and the Counterparty to the Potentially Assigned Contract shall be deemed to have consented to the Cure Costs and shall forever be barred from asserting any other claims related to such Assigned Contract against the Debtor or the Winning Bidder, or the property of any of them.

20.     To the extent requested by a Counterparty, the Debtor shall provide, with respect to each Qualified Bidder, information to demonstrate that each Qualified Bidder is able to fulfill all obligations in connection with satisfying adequate assurance of future performance under any Assigned Contract ("**Adequate Assurance Information**"). In particular, the Debtor shall provide, with respect to JS Brands and each Qualified Bidder, the Adequate Assurance Information. The Debtor shall: (a) within 48 hours of receipt of an Offer from a Potential Bidder other than JS Brands, and (b) with respect to JS Brands, by no later than **November 24, 2020, at 4:00 p.m.**

(prevailing Eastern Time), provide a copy of the Adequate Assurance Information to those Counterparties (or their counsel) who have: (x) submitted a written request (e-mail to the Debtor's counsel is acceptable) for Adequate Assurance Information and (y) confirmed in writing to the Trustee's counsel (e-mail to Debtor's counsel is acceptable) their agreement to keep such Adequate Assurance Information strictly confidential and use it solely for the purpose of evaluating whether a Potential Bidder has provided adequate assurance of future performance under the affected Potentially Assigned Contract.

21.    Any Counterparty to an Potentially Assigned Contract that has an objection to the proposed assumption and assignment of an Potentially Assigned Contract, the subject of which objection is a Winning Bidder's proposed form of adequate assurance of future performance with respect to such contract (each, an "**Adequate Assurance Objection**"), shall file with the Court and simultaneously serve on the Objection Recipients an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including submitting any appropriate supporting documentation, by no later than **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time). Replies, if any, to Adequate Assurance Objections shall be filed by **December 11, 2020, at 4:00 p.m.** (prevailing Eastern Time).

22.    The Debtor and any Counterparty that has filed an Adequate Assurance Objection shall confer in good faith in an effort to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Court shall determine any issues of adequate assurance of future performance by the applicable Winning Bidder at the Sale Hearing.

23.    If a Counterparty fails to timely file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, the Counterparty shall be deemed to have consented

to the assumption and assignment of the affected Potentially Assigned Contract (unless the Counterparty has filed a timely Cure Objection with respect to the Assigned Contract) to the applicable Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment. Further, in the event no objections are filed and served, the applicable Winning Bidder shall be deemed to have provided adequate assurance of future performance with respect to the affected Potentially Assigned Contract in accordance with 11 U.S.C. § 365(f)(2)(B), notwithstanding anything to the contrary in the Potentially Assigned Contract, or any other document.

24.    Any Counterparty to a Potentially Assigned Contract that wishes to file a Sale Objection (other than a Cure Objection or an Adequate Assurance Objection) to the proposed assumption and assignment of a Potentially Assigned Contract shall file with the Court and serve on the Objection Recipients its Sale Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than the Sale Objection Deadline of **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time). Replies, if any, to Sale Objections shall be filed by **December 11, 2020, at 4:00 p.m.** (prevailing Eastern Time).

25.    If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Sale Objection, the Counterparty shall be deemed to have consented to the assumption and assignment of the Potentially Assigned Contract (unless the Counterparty has filed a timely Cure Objection or Adequate Assurance Objection with respect to the Potentially Assigned Contract) to the applicable Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment.

26.     The Debtor reserves all of its rights, claims, and causes of action with respect to each Potentially Assigned Contract or other document listed on the Potential Assigned Contracts Notice. The Debtor's inclusion of any Potentially Assigned Contract on the Potential Assigned Contracts Notice shall not be a covenant, promise, or guarantee that such contract ultimately will be assumed and assigned.

### The Debtor's Entry into the Stalking Horse APA

27.     The Debtor is authorized to perform all respective pre-closing obligations under the Stalking Horse APA; provided that, for the avoidance of doubt, consummation of the sale contemplated by the Stalking Horse APA shall be subject to entry of the Sale Order and the satisfaction or waiver of the other conditions to closing set forth in the Stalking Horse APA.

### Bid Protections

28.     The Expense Reimbursement, and the provisions of the Stalking Horse APA relating thereto, are hereby approved.

### Other Relief Granted

29.     The Debtor is authorized and empowered to take all steps, and incur and pay all costs and expenses, as may be reasonably necessary to fulfill the requirements established by this Order.

30.     The Debtor is hereby authorized to implement the Bidding Procedures and conduct the Auction without the necessity of complying with any state or local bulk transfers law, or requirement or any similar law of any state or other jurisdiction which may apply in any way to any of the transactions under the APA.

31.     In the event there is a conflict between this Order and the Sale Motion, this Order shall control and govern.

32.     This Order shall become effective immediately upon its entry.

33.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: _____, 2020
        New York, New York

_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

**Bidding Procedures**

## BIDDING PROCEDURES

Branded Apparel Group LLC (the "**Debtor**"), the debtor and debtor-in-possession in the Chapter 11 case pending in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") under Case No. 20-12552-scc (the "**Chapter 11 Case**"), has entered into an asset purchase agreement (the "**APA**") with JS Brands LLC ("**JS Brands**"), dated as of October 29, 2020, for the sale of substantially all of the Debtor's assets (collectively, the "**Purchased Assets**"), free and clear of any and all liens, claims, encumbrances and other interests (except as explicitly stated in the APA). The Debtor is currently soliciting higher or otherwise better bids for the sale of the Purchased Assets (the "**Proposed Sale**").

Set forth below are the Bidding Procedures that will be employed in connection with the Proposed Sale.

### A. Key Dates and Deadlines

| Deadline | Event |
|---|---|
| November 5, 2020, at 10:00 a.m. | Hearing on Bidding Procedures |
| November 6, 2020 | Deadline to mail Bidding Procedures Notice and Sale Motion |
| November 23, 2020, at 4:00 p.m. | Bid Deadline |
| November 24, 2020, at 4:00 p.m. | Deadline for the Debtor to notify Potential Bidders of their status as Qualified Bidders and whether Auction will occur |
| November 30, 2020, at 10:00 a.m. | Auction (if necessary) |
| December 4, 2020, at 4:00 p.m. | Sale Objection Deadline, Cure Objection Deadline, and Adequate Assurance Objections Deadline |
| December 11, 2020, at 4:00 p.m. | Deadline for the Debtor to file Replies to Sale Objections, Cure Objections, and Adequate Assurance Objections |
| December 12, 2020, at 10:00 a.m. | Sale Hearing |
| December 13, 2020 | Closing (**time of the essence**) |

### B. The Description of the Purchased Assets

The Debtor is seeking to sell substantially all of the Purchased Assets free and clear of all liens, claims, interests, or other encumbrances.

### C. Consultation Parties

Throughout the sale process, as necessary or appropriate, the Debtor will consult with the following parties: (a) counsel for Merchant Factors Corp., Klestadt Winters Jureller Southard & Stevens, LLP (Attn: Ian R. Winters, Esq.); (b) the Subchapter V Trustee; and (c) the Office of the United States Trustee (the "**Consultation Parties**").

D. **Stalking Horse Bidder**

THE DEBTOR RESERVES THE RIGHT, IN ITS DISCRETION, AND AFTER
CONSULTATION WITH THE CONSULTATION PARTIES, TO DETERMINE WHETHER
ANY BID IS BETTER, IF NOT HIGHER, THAN ANOTHER BID SUBMITTED DURING THE
AUCTION. THE DEBTOR MAY CONSIDER A VARIETY OF FACTORS IN MAKING THIS
DECISION, INCLUDING, WITHOUT LIMITATION, ANY PROPOSED CONDITIONS TO
CLOSING, TIMING OF CLOSING OF THE PROPOSED TRANSACTION AND THE
LIKELIHOOD OF THE BIDDER TO OBTAIN REQUISITE APPROVALS.

E. **Bidder Qualifications**

To constitute a qualified bid (each a "**Qualified Bid**"), a Potential Bidder must submit a
Bid by the Bid Deadline, and the Debtor, in consultation with the Consultation Parties, must
determine that the Offer satisfies the following requirements:

   i. Modified APA: Each Bid must include: (i) an executed copy of an asset purchase
      agreement which is not materially more burdensome to the Debtor than the Stalking
      Horse APA or inconsistent with these Bidding Procedures (each a "**Modified
      APA**"); and (ii) a marked-up copy of the Modified APA reflecting the differences
      between the Modified APA and the Stalking Horse APA. The Debtor, in
      consultation with the Consultation Parties, shall determine whether any Modified
      APA that modifies the Stalking Horse APA in any respect beyond the identity of
      the purchaser and the purchase price under the Modified APA results in such Bid
      being materially less favorable to the Debtors' estates, which may be considered in
      the Debtor's deliberations as to what constitutes the highest and best offer.

   ii. Modified Sale Order: Each Offer must include a marked-up copy of the Sale Order
      (each a "**Modified Sale Order**") reflecting the differences between the proposed
      Sale Order, annexed to the Sale Motion as Exhibit D, and the Modified Sale Order
      as requested by the party submitting the Bid. The Debtor, in consultation with the
      Consultation Parties, shall determine whether any Modified Sale Order that
      modifies the proposed Sale Order in any respect beyond the identity of the
      purchaser and the purchase price results in such Bid being materially less favorable
      to the Debtor's estate, which may be considered in the Debtor's deliberations as to
      what constitutes the highest and best offer.

   iii. Bidding Requirements: A Bid for the Purchased Assets shall not be less than
      $200,000 (the sum of the Stalking Horse Offer ($175,000) plus the maximum
      Expenses Reimbursement ($25,000) (the "**Initial Overbid Amount**")).

   iv. Identification of Bidder: Each Bid must fully disclose the legal identity of each
      entity that will be bidding for the Purchased Assets and participating in connection
      with such Bid (including but not limited to any equity holder or other financial
      backer if the Potential Bidder is an entity specifically formed for purposes of
      effectuating the Proposed Sale, and the complete terms of any such participation)
      and must also disclose any connections or agreements with the Debtor, any other

known Potential Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

v.   Financial Information: Any Potential Bidder that wishes to submit a Bid for the Purchased Assets must provide the Debtor with sufficient and adequate information to demonstrate, to the satisfaction of the Debtor, in consultation with the Consultation Parties, that the Bid: (i) is being made by an entity that has the financial wherewithal and ability to consummate the Bid, and (ii) provides information to demonstrate that it is able to fulfill all obligations in connection with all Assigned Contracts so as to satisfy the requirement of providing adequate assurance of future performance, as contemplated by section 365 of the Bankruptcy Code (the "**Adequate Assurance Information**").

vi.   Other Requirements: Each Bid shall: (i) state that Bid is formal, binding and unconditional, is not subject to further due diligence, and is irrevocable until the earlier to occur of: (x) the first business day following the closing of the Proposed Sale or (y) thirty (30) days following the last date of the Auction (as the same may be adjourned); (ii) not contain any financing or employment-related contingencies of any kind; (iii) not contain any condition to closing the Proposed Sale on the receipt of any third party approvals that were not required by the Stalking Horse APA; (iv) state that the Potential Bidder is ready, willing and able to perform its obligations under the Modified APA submitted with such Bid; (v) expressly state that the Potential Bidder agrees to serve as a backup bidder (each a "**Backup Bidder**") if such bidder's Qualified Bid is selected as the next highest or next best bid after the Winning Bid for the Assets; (vi) include contact information for the person(s) the Debtor should contact with questions about the Potential Bidder's Bid; and (vii) be received by the Debtor and the Consultation Parties by the Bid Deadline.

vii.   Good Faith Deposit: All Qualified Bids must be accompanied by a good faith deposit in the amount of ten percent (10%) of the Offer (a "**Good Faith Deposit**"), in the form of a certified or cashier's check, payable to "Kudman Trachten Aloe Posner LLP, as Attorneys," or by wire transfer, instructions for which will be provided upon request. All such deposits shall be retained by the Debtor pending the hearing to consider the Sale Motion and shall be returned within ten (10) days after entry of a Sale Order, except that the Debtor will hold the deposit of the Backup Bidder, until the earlier of (i) the first business day following closing of the Proposed Sale or (ii) thirty (30) days following the last date of the Auction (as the same may be adjourned), provided that any Potential Bidder submitting a credit bid component pursuant to section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit on account of such component of the Potential Bidder's Bid.

**F.   Due Diligence**

To be eligible to participate in the Auction, each Potential Bidder must execute a nondisclosure agreement in form and on terms satisfactory to the Debtor.

In addition, each Potential Bidder must demonstrate financial wherewithal to complete a transaction for the Purchased Assets by providing to the Debtor (a) financial statements for the last two calendar years and (b) a letter from a bank or other financial institution that indicates cash liquidity or credit availability of at least the amount of its Bid.

If the Debtor determines, after consultation with the Consultation Parties, that a Potential Bidder does not qualify as a Qualified Bidder, such Potential Bidder shall not be entitled to receive due diligence access or additional non-public information.

## G. **Bid Deadline**

Any person or entity interested in participating in the Auction shall submit a Bid in writing and transmit such bid to the Debtor's counsel, Kudman Trachten Aloe Posner LLP, 800 Third Avenue, 11th Floor, New York, New York 10022 (Attn: Paul H. Aloe and David N. Saponara), so that it is received by no later than **November 23, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Bid Deadline**"). The Debtor may, after consulting with the Consultation Parties, extend the Bid Deadline in its reasonable business judgment.

## H. **Selecting Qualified Bidders**

The Debtor shall, in consultation with the Consultation Parties, make a determination whether a Bid is a Qualified Bid and shall notify each Potential Bidder whether its Bid has qualified as a Qualified Bid by no later than **November 24, 2020, at 4:00 p.m.** (prevailing Eastern Time). Any Potential Bidder whose Offer is determined to be a Qualified Bid shall be designated as a "Qualified Bidder."

If a Bid is submitted prior to the Bid Deadline that is determined to not be a Qualified Bid, the Debtor will promptly advise the Potential Bidder of the deficiencies, if any, and allow such Potential Bidder one (1) day to submit a revised offer. In addition, if the Debtor, after consulting with the Consultation Parties and after providing notice to the Notice Parties, determines to extend the Bid Deadline, the Debtor shall be required to notify Prospective Bidders whether their bids have qualified as Qualified Bids by no later than two (2) business days after the newly-scheduled Bid Deadline.

## I. **Credit Bidding**

Any secured creditor, including MFG, holding an allowed secured claim against the Debtor shall have the right, subject to the provisions of the Bankruptcy Code, applicable law, and any agreement of such secured creditor, to credit bid such claims to the extent of such secured party's interest in or lien on the Purchased Assets.

## J. **The Auction**

If the Debtor receives at least two (2) Qualified Bids for the Purchased Assets, the Debtor shall conduct an auction (the "**Auction**"). The Auction, if required, shall be held at the offices of Kudman Trachten Aloe Posner LLP, 800 Third Avenue, 11th Floor, New York, New York 10022, or at such alternative location as the Debtor may determine, after consultation with the Consultation Parties and after providing notice to the Notice Parties. The Auction shall commence

on **November 30, 2020, at 10:00 a.m.** (prevailing Eastern Time). The Auction shall be conducted openly and shall be transcribed by a court reporter.

Only Qualified Bidders and their representatives, the Debtor and its representatives, and the Consultation Parties and their respective representatives will be permitted to attend the Auction. The following procedures will be applicable at the Auction:

   i. Each Qualified Bidder shall appear in person at the Auction through a duly authorized representative. Only Qualified Bidders shall be entitled to make any subsequent bids at the Auction. Each Qualified Bidder shall be required to confirm that (i) it has not engaged in any collusion with respect to the bidding or the Proposed Sale; and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets if such bid if selected as the Winning Bidder.

   ii. Procedures for Conducting Auction. At the commencement of the Auction, the Debtor, after consultation with the Consultation Parties, shall announce the highest Bid received for the Purchased Assets. Such highest sealed bid shall constitute the baseline bid (the "**Baseline Bid**") for the Auction. The Qualified Bidder(s) submitting the Baseline Bid shall not be required to bid in the first round of the Auction. Qualified Bidders other than the Qualified Bidder that submitted the Baseline Bid shall be invited to top the Baseline Bid. Any bid to top the Baseline Bid shall be not less than the Initial Overbid Amount, and each successive bid shall be in an increment not less than $10,000, provided, however, that the Debtor may, after consultation with the Consultation Parties, increase or decrease the bid increments. Except with respect to the Qualified Bidder that submitted the Baseline Bid, subsequent bidding shall be made by other Qualified Bidders in the order in which such Qualified Bids were received, which shall be announced at the commencement of the Auction. Any Qualified Bidder that declines to top the Baseline Bid shall be excluded from further bidding. Bidding shall proceed in successive rounds until each Qualified Bidder not previously excluded from bidding declines to top the last bid.

   iii. Winning Bid: Immediately prior to the conclusion of the Auction, the Debtor shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which bid constitutes the winning bid (the "**Winning Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity or identities of the bidder(s) that submitted the Winning Bid (the "**Winning Bidder**") and the amount of the purchase price and other material terms of the Winning Bid.

   iv. The Auction may include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids at the Auction to improve their bids. The Debtor may, in its reasonable business judgment, after consultation with the Consultation Parties, negotiate with any and all Qualified Bidders during the Auction.

   v. The Debtor shall have the right, after consulting with the Consultation Parties, to determine, in its reasonable business judgment, which bid or combination of bids

constitutes the highest or otherwise best bid and reject at any time, any bid that the Debtor determines to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, Bankruptcy Rules, or the Local Rules, these Bidding Procedures, any order of the Bankruptcy Court, or is not in the best interests of the Debtors and their estates.

vi. Within one (1) business day after conclusion of the Auction, the Winning Bidder shall be required to supplement its Good Faith Deposit by the difference between its Qualified Bid and the Winning Bid times ten percent (10%).

vii. Backup Bid: Immediately prior to the conclusion of the Auction, the Debtor shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which bid constitutes the backup bid (the "**Backup Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity or identities of the bidder(s) that submitted the Backup Bid (each such bidder, the "**Backup Bidder**") and the amount of the purchase price and other material terms of the Backup Bid. Backup Bids shall be open and irrevocable until the earlier of (i) the first business day following closing of the Proposed Sale or (ii) thirty (30) days following the last date of the Auction (as the same may be adjourned). If the Winning Bidder fails to consummate a Proposed Sale, the Backup Bidder shall be deemed the new Winning Bidder, and the Debtor will be authorized, but not required, to consummate a Proposed Sale with the Backup Bidder.

viii. Subject to the terms and conditions set forth in the Stalking Horse APA or Modified APA, in the event that a Winning Bidder fails to consummate the proposed transaction by the Closing Date, such bidder's deposit shall be forfeited to the Debtor as liquidated damages, and the Debtor shall be free to consummate the proposed transaction with the Backup Bidder at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtor may consummate the transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Court.

ix. Within one (1) business day after conclusion of the Auction, the Backup Bidder shall be required to supplement its Good Faith Deposit by the difference between its Qualified Bid and the Backup Bid multiplied by ten percent (10%).

x. Modification of Procedures: The Debtor may, after consulting with the Consultation Parties, announce at the Auction modified or additional procedures for conducting the Auction.

xi. Auction Results: Within one (1) business day following the Auction, the Debtor will cause the results of the Auction to be filed with the Court, by docketing the same on the Court's electronic case filing ("**ECF**") system.

## **EXHIBIT 2**

**Bidding Procedures Notice**

# **EXHIBIT 3**

**Potential Assigned Contracts Notice**

# EXHIBIT B

Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
800 Third Avenue, 11th Floor
New York, New York 10022
Tel: (212) 868-1010
Fax: (212) 868-0013
Email: paloe@kudmanlaw.com
         dsaponara@kudmanlaw.com

*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BRANDED APPAREL GROUP LLC,[1] | Case No. 20-12552-scc |
| Debtor. | (Subchapter V) |

**NOTICE OF THE DEBTOR'S SALE OF SUBSTANTIALLY ALL OF ITS ASSETS**
**AND BIDDING PROCEDURES AND AUCTION RELATED THERETO**

**PLEASE TAKE NOTICE**, that on November 5, 2020, the United States Bankruptcy

Court for the Southern District of New York (the "**Court**") entered an Order (the "**Bidding**

**Procedures Order**") (a) establishing bidding procedures and bid protections, including an auction,

as set forth herein (the "**Bidding Procedures**"), with respect to the Debtor's sale of substantially

all of its assets free and clear of liens, claims, interests, and encumbrances (the "**Proposed Sale**");

(b) approving the form and manner of notices thereof (the "**Bidding Procedures Notice**"), and (c)

establishing JS Brands LLC ("JS Brands") as the stalking horse bidder for substantially all of the

Debtor's assets (the "**Purchased Assets**"), (d) approving the form of Asset Purchase Agreement

---

[1] The last four digits of the Debtor's federal tax identification number is 8524. The location of the Debtor's service
address is: 141 West 36th Street, 10th Fl., New York, NY 10018.

by and among the Debtor and JS Brands (the "**APA**"),[2] pursuant to which the Debtor proposes to

sell the Purchased Assets to JS Brands, or to a third party that makes a higher and/or better offer

for the Purchased Assets, and (e) setting a hearing to consider approval of the Proposed Sale (the

"**Sale Hearing**");

      **PLEASE TAKE FURTHER NOTICE**, that pursuant to the Bidding Procedures Order,

an Auction for the Purchased Assets will take place on **November 30, 2020**, at the law offices of

Kudman Trachten Aloe Posner LLP, or at such alternative location as the Debtor may determine,

**commencing at 10:00 a.m.** (prevailing Eastern Time);

      **PLEASE TAKE FURTHER NOTICE**, that pursuant to the following procedures (the

"**Bidding Procedures**"), approved by the Bidding Procedures Order, in order to participate in the

Auction, should one be deemed necessary, a party must submit an offer ("**Offer**") that is deemed

a qualified bid (a "**Qualified Bid**");

      **PLEASE TAKE FURTHER NOTICE**, that pursuant to the Bidding Procedures, to

qualify as a Qualified Bid, a Potential Bidder must submit a Bid by the Bid Deadline, and the

Trustee, in consultation with the Consultation Parties, must determine that the Offer satisfies the

following requirements:

    a.   Bid Deadline: Any person or entity interested in participating in the Auction shall
submit a Bid in writing and transmit such bid to the Debtor's counsel, Kudman
Trachten Aloe Posner LLP, 800 Third Avenue, 11th Floor, New York, New York
10022 (Attn: Paul H. Aloe and David N. Saponara), so that it is received by no later
than **November 23, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Bid
Deadline**"). The Debtor may, after consulting with the Consultation Parties, extend
the Bid Deadline in its reasonable business judgment.

---

[2] A copy of the APA is attached as Exhibit "C" to the Debtor's *Motion for Entry of Orders Pursuant to 11 U.S.C. §§
105, 363, and 365, and Rules 2002, 6004, and 6006: (A) Fixing the Time, Date and Place for Hearing to Consider
Bidding Procedures in Connection with the Debtor's Sale of Substantially all of Its Assets; (B)(i) Establishing Bidding
Procedures, (ii) Approving the Form and Manner of Notices, and (iii) Setting Hearing Date for the Hearing on
Proposed Sale of Substantially all of the Debtor's Assets; (C) Approving the Sale of the Debtor's Assets Free and
Clear of All Liens, Claims, Interests, and Encumbrances; and (D) Granting Related Relief* (the "**Sale Motion**").

b. <u>Modified APA</u>: Each Bid must include: (i) an executed copy of an asset purchase agreement which is not materially more burdensome to the Debtor than the Stalking Horse APA or inconsistent with these Bidding Procedures (each a "**Modified APA**"); and (ii) a marked-up copy of the Modified APA reflecting the differences between the Modified APA and the Stalking Horse APA. The Debtor, in consultation with the Consultation Parties, shall determine whether any Modified APA that modifies the Stalking Horse APA in any respect beyond the identity of the purchaser and the purchase price under the Modified APA results in such Bid being materially less favorable to the Debtor's estates, which may be considered in the Debtor's deliberations as to what constitutes the highest and best offer.

c. <u>Modified Sale Order</u>: Each Offer must include a marked-up copy of the Sale Order (each a "**Modified Sale Order**") reflecting the differences between the proposed Sale Order, annexed hereto as **Exhibit D**, and the Modified Sale Order as requested by the party submitting the Bid. The Debtor, in consultation with the Consultation Parties, shall determine whether any Modified Sale Order that modifies the proposed Sale Order in any respect beyond the identity of the purchaser and the purchase price results in such Bid being materially less favorable to the Debtor's estate, which may be considered in the Debtor's deliberations as to what constitutes the highest and best offer.

d. <u>Bidding Requirements</u>: A Bid for the Purchased Assets shall not be less than $200,000 (the sum of the Stalking Horse Offer ($175,000) plus the maximum Expenses Reimbursement ($25,000) (the "**Initial Overbid Amount**")).

e. <u>Identification of Bidder</u>: Each Bid must fully disclose the legal identity of each entity that will be bidding for the Purchased Assets and participating in connection with such Bid (including but not limited to any equity holder or other financial backer if the Potential Bidder is an entity specifically formed for purposes of effectuating the Proposed Sale, and the complete terms of any such participation) and must also disclose any connections or agreements with the Debtor, any other known Potential Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

f. <u>Financial Information</u>: Any Potential Bidder that wishes to submit a Bid for the Purchased Assets must provide the Debtor with sufficient and adequate information to demonstrate, to the satisfaction of the Debtor, in consultation with the Consultation Parties, that the Bid: (i) is being made by an entity that has the financial wherewithal and ability to consummate the Bid, and (ii) provides information to demonstrate that it is able to fulfill all obligations in connection with all Assigned Contracts so as to satisfy the requirement of providing adequate assurance of future performance, as contemplated by section 365 of the Bankruptcy Code (the "**Adequate Assurance Information**").

g. <u>Other Requirements</u>: Each Bid shall: (i) state that Bid is formal, binding, and unconditional, is not subject to further due diligence, and is irrevocable until the earlier to occur of: (x) the first business day following the closing of the Proposed

Sale or (y) thirty (30) days following the last date of the Auction (as the same may be adjourned); (ii) not contain any financing or employment-related contingencies of any kind; (iii) not contain any condition to closing the Proposed Sale on the receipt of any third party approvals that were not required by the Stalking Horse APA; (iv) state that the Potential Bidder is ready, willing and able to perform its obligations under the Modified APA submitted with such Bid; (v) expressly state that the Potential Bidder agrees to serve as a backup bidder (each a "**Backup Bidder**") if such bidder's Qualified Bid is selected as the next highest or next best bid after the Winning Bid for the Assets; (vi) include contact information for the person(s) the Debtor should contact with questions about the Potential Bidder's Bid; and (vii) be received by the Debtor and the Consultation Parties by the Bid Deadline.

h. <u>Good Faith Deposit</u>: All Qualified Bids must be accompanied by a good faith deposit in the amount of ten percent (10%) of the Offer (a "**Good Faith Deposit**"), in the form of a certified or cashier's check, payable to "Kudman Trachten Aloe Posner LLP, as Attorneys," or by wire transfer, instructions for which will be provided upon request. All such deposits shall be retained by the Debtor pending the hearing to consider the Sale Motion and shall be returned within ten (10) days after entry of a Sale Order, except that the Debtor will hold the deposit of the Backup Bidder, until the earlier of (i) the first business day following closing of the Proposed Sale or (ii) thirty (30) days following the last date of the Auction (as the same may be adjourned), provided that any Potential Bidder submitting a credit bid component pursuant to section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit on account of such component of the Potential Bidder's Bid.

**PLEASE TAKE FURTHER NOTICE**, that if the Debtor receives at least one (1) Qualified Bid (in addition to the Stalking Horse) for the Purchased Assets, the Trustee shall conduct an auction (the "**Auction**"). The Auction, if required, shall be held at the offices of Kudman Trachten Aloe Posner LLP, 800 Third Avenue, 11th Floor, New York, New York 10022, or at such alternative location as the Debtor may determine, after consultation with the Consultation Parties and after providing notice to the Notice Parties. The Auction shall commence on **November 30, 2020, at 10:00 a.m.** (prevailing Eastern Time). The Auction shall be conducted openly and shall be transcribed by a court reporter.

**PLEASE TAKE FURTHER NOTICE**, that only Qualified Bidders and their representatives, the Debtor and its representatives, and the Consultation Parties and their respective

representatives will be permitted to attend the Auction. The following procedures will be applicable at the Auction:

a. Each Qualified Bidder shall appear in person at the Auction through a duly authorized representative. Only Qualified Bidders shall be entitled to make any subsequent bids at the Auction. Each Qualified Bidder shall be required to confirm that (i) it has not engaged in any collusion with respect to the bidding or the Proposed Sale; and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets if such bid if selected as the Winning Bidder.

b. Procedures for Conducting Auction. At the commencement of the Auction, the Debtor, after consultation with the Consultation Parties, shall announce the highest Bid received for the Purchased Assets. Such highest sealed bid shall constitute the baseline bid (the "**Baseline Bid**") for the Auction. The Qualified Bidder(s) submitting the Baseline Bid shall not be required to bid in the first round of the Auction. Qualified Bidders other than the Qualified Bidder that submitted the Baseline Bid shall be invited to top the Baseline Bid. Any bid to top the Baseline Bid shall be not less than the Initial Overbid Amount, and each successive bid shall be in an increment not less than $10,000, provided, however, that the Debtor may, after consultation with the Consultation Parties, increase or decrease the bid increments. Except with respect to the Qualified Bidder that submitted the Baseline Bid, subsequent bidding shall be made by other Qualified Bidders in the order in which such Qualified Bids were received, which shall be announced at the commencement of the Auction. Any Qualified Bidder that declines to top the Baseline Bid shall be excluded from further bidding. Bidding shall proceed in successive rounds until each Qualified Bidder not previously excluded from bidding declines to top the last bid.

c. Winning Bid: Immediately prior to the conclusion of the Auction, the Debtor shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which bid constitutes the winning bid (the "**Winning Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity or identities of the bidder(s) that submitted the Winning Bid (the "**Winning Bidder**") and the amount of the purchase price and other material terms of the Winning Bid.

d. The Auction may include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids at the Auction to improve their bids. The Debtor may, in its reasonable business judgment, after consultation with the Consultation Parties, negotiate with any and all Qualified Bidders during the Auction.

e. The Debtor shall have the right, after consulting with the Consultation Parties, to determine, in its reasonable business judgment, which bid or combination of bids constitutes the highest or otherwise best bid and reject at any time, any bid that the Debtor determines to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, Bankruptcy Rules, or the Local Rules, these

Bidding Procedures, any order of the Bankruptcy Court, or is not in the best interests of the Debtor and its estate.

f.   Within one (1) business day after conclusion of the Auction, the Winning Bidder shall be required to supplement its Good Faith Deposit by the difference between its Qualified Bid and the Winning Bid times ten percent (10%).

g.   Backup Bid: Immediately prior to the conclusion of the Auction, the Debtor shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which bid constitutes the backup bid (the "**Backup Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity or identities of the bidder(s) that submitted the Backup Bid (each such bidder, the "**Backup Bidder**") and the amount of the purchase price and other material terms of the Backup Bid. Backup Bids shall be open and irrevocable until the earlier of (i) the first business day following closing of the Proposed Sale or (ii) thirty (30) days following the last date of the Auction (as the same may be adjourned). If the Winning Bidder fails to consummate a Proposed Sale, the Backup Bidder shall be deemed the new Winning Bidder, and the Debtor will be authorized, but not required, to consummate a Proposed Sale with the Backup Bidder.

h.   Subject to the terms and conditions set forth in the Stalking Horse APA or Modified APA, in the event that a Winning Bidder fails to consummate the proposed transaction by the Closing Date, such bidder's deposit shall be forfeited to the Debtor as liquidated damages, and the Debtor shall be free to consummate the proposed transaction with the Backup Bidder at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtor may consummate the transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Court.

i.   Within one (1) business day after conclusion of the Auction, the Backup Bidder shall be required to supplement its Good Faith Deposit by the difference between its Qualified Bid and the Backup Bid multiplied by ten percent (10%).

j.   Modification of Procedures: The Debtor may, after consulting with the Consultation Parties, announce at the Auction modified or additional procedures for conducting the Auction.

k.   Auction Results: Within one (1) business day following the Auction, the Debtor will cause the results of the Auction to be filed with the Court, by docketing the same on the Court's electronic case filing ("**ECF**") system.

**PLEASE TAKE FURTHER NOTICE**, that copies of the Sale Motion and the Bidding

Procedures Order are enclosed herein and additional copies can be obtained by written request to

the undersigned.

Dated: New York, New York
      November __, 2020

By:    _____

    Paul H. Aloe
    David N. Saponara
    KUDMAN TRACHTEN ALOE POSNER LLP
    800 Third Avenue, 11th Floor
    New York, New York 10022
    Tel: (212) 868-1010
    Fax: (212) 868-0013
    Email: paloe@kudmanlaw.com
           dsaponara@kudmanlaw.com

    *Proposed Counsel to the Debtor*
    *and Debtor-in-Possession*

# EXHIBIT C

DocuSign Envelope ID: 7EG42904-DFF3-4E7E-900B-A53CAAD49B7

**ASSET PURCHASE AGREEMENT**

**BETWEEN**

**BRANDED APPAREL GROUP LLC, AS SELLER**

**AND**

**JS BRANDS LLC, AS PURCHASER**

**DATED AS OF OCTOBER 29, 2020**

# TABLE OF CONTENTS

PAGE

ARTICLE 1 CERTAIN DEFINITIONS ........................................................................... 1
    Section 1.1.   Certain Definitions.................................................................. 1

ARTICLE 2 PURCHASE AND SALE ............................................................................. 6
    Section 2.1.   Purchase and Sale of the Purchased Assets............................... 6
    Section 2.2.   Assumption of Liabilities ....................................................... 7
    Section 2.3.   Purchase Price....................................................................... 7

ARTICLE 3 REPRESENTATIONS AND WARRANTIES OF SELLER................................ 8
    Section 3.1.   Organization and Authority..................................................... 8
    Section 3.2.   No Conflict or Violation ......................................................... 8
    Section 3.3.   Consents and Approvals......................................................... 8
    Section 3.4.   Broker................................................................................. 8
    Section 3.5.   Litigation ............................................................................ 8
    Section 3.6.   Compliance with Law ............................................................ 9
    Section 3.7.   Title to Assets. ...................................................................... 9

ARTICLE 4 REPRESENTATIONS AND WARRANTIES OF PURCHASER ........................ 9
    Section 4.1.   Authority ............................................................................ 9
    Section 4.2.   No Conflict or Violation ......................................................... 9
    Section 4.3.   Consents and Approvals......................................................... 9
    Section 4.4.   Brokers ............................................................................. 10
    Section 4.5.   Availability of Funds ........................................................... 10
    Section 4.6.   Condition of Business .......................................................... 10

ARTICLE 5 CERTAIN COVENANTS OF SELLER ........................................................ 10
    Section 5.1.   Conduct of Business Prior to the Closing ............................... 10
    Section 5.2.   Access to Information. ......................................................... 10
    Section 5.3.   Further Assurance. .............................................................. 10
    Section 5.4.   Reasonable Efforts. ............................................................. 11
    Section 5.5.   Closing Conditions.............................................................. 11

ARTICLE 6 CERTAIN COVENANTS OF PURCHASER................................................. 11
    Section 6.1.   Reasonable Efforts. ............................................................. 11
    Section 6.2.   Consents and Approvals Efforts. ........................................... 11
    Section 6.3.   Further Assurance. .............................................................. 11

ARTICLE 7 CONDITIONS TO SELLER'S OBLIGATIONS TO CONSUMMATE THE
    CLOSING............................................................................................. 11
    Section 7.1.   Representations and Warranties ............................................ 11
    Section 7.2.   Compliance with Agreement ................................................ 11
    Section 7.3.   Entry of the Confirmation Order ........................................... 11
    Section 7.4.   No Legal Impediment to Closing........................................... 12
    Section 7.5.   Consents and Approvals....................................................... 12

Section 7.6.    Purchaser Deliveries ............................................................ 12
Section 7.7.    Payment of Purchase Price .................................................. 12

ARTICLE 8 CONDITIONS TO PURCHASER'S OBLIGATIONS ......................................... 12
Section 8.1.    Representations and Warranties ........................................... 12
Section 8.2.    Compliance with Agreement ................................................ 12
Section 8.3.    Entry of the Confirmation Order ......................................... 13
Section 8.4.    Material Adverse Change ..................................................... 13
Section 8.5.    No Legal Impediment to Closing .......................................... 13
Section 8.6.    Consents and Approvals ...................................................... 13
Section 8.7.    Seller Deliveries ................................................................... 13

ARTICLE 9 BANKRUPTCY COURT MATTERS ................................................................. 13
Section 9.1.    Competing Bids .................................................................... 13
Section 9.2.    Bankruptcy Court Filings .................................................... 13
Section 9.3.    Stalking Horse Designation ................................................. 14
Section 9.4.    Motion ................................................................................. 14

ARTICLE 10 THE CLOSING ................................................................................................. 14
Section 10.1.   Closing ................................................................................. 14
Section 10.2.   Deliveries by Seller ............................................................. 14
Section 10.3.   Deliveries by Purchaser ...................................................... 14

ARTICLE 11 TERMINATION ............................................................................................... 15
Section 11.1.   Termination .......................................................................... 15
Section 11.2.   Effect of Termination .......................................................... 16

ARTICLE 12 TAXES AND RECORD .................................................................................... 17
Section 12.1.   Taxes Related to Purchase of Assets ................................... 17
Section 12.2.   Proration of Personal Property ............................................ 17

ARTICLE 13 EMPLOYEES AND EMPLOYEE BENEFITS ................................................ 17
Section 13.1.   New Employees .................................................................... 17
Section 13.2.   No Successor Employer Liability ........................................ 17

ARTICLE 14 MISCELLANEOUS ........................................................................................ 17
Section 14.1.   Survival of Representations, Warranties and Covenants ..... 17
Section 14.2.   Notices ................................................................................. 18
Section 14.3.   Amendments and Waiver ..................................................... 18
Section 14.4.   Assignment .......................................................................... 19
Section 14.5.   Fees and Expenses ............................................................... 19
Section 14.6.   Entire Agreement ................................................................ 19
Section 14.7.   Descriptive Heading ............................................................ 19
Section 14.8.   Governing Law; Jurisdiction .............................................. 19
Section 14.9.   Severability .......................................................................... 19
Section 14.10.  Non-Recourse ...................................................................... 20
Section 14.11.  Counterparts; Facsimile Signatures .................................... 20

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "**Agreement**"), dated as of October 29, 2020, is made by and between Branded Apparel Group LLC, a Delaware limited liability company ("**Seller**"), and JS Brands LLC, a Delaware limited liability company ( "**Purchaser**").

Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in <u>Article 1</u>.

## RECITALS:

**WHEREAS,** Seller is in the business of designing, manufacturing, and selling branded and private label men's contemporary fashion clothing and accessories (the "**Business**");

**WHEREAS,** Seller intends to file a voluntary petition with the Bankruptcy Court initiating a case under Subchapter V of Chapter 11 of the Bankruptcy Code and will continue in the possession of its assets and in the management of the Business pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS,** Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, substantially all of the assets of the Business, and Purchaser will assume certain liabilities, all on the terms and subject to the conditions set forth herein.

**NOW, THEREFORE**, in consideration of the promises and of the mutual agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1
## CERTAIN DEFINITIONS

**Section 1.1.    <u>Certain Definitions</u>.** As used in this Agreement, the following terms have the respective meanings set forth below.

"**Accrued Royalties**" means Seller's obligations to S&S IP Holdings Limited pursuant that certain trademark license agreement dated as of July 19, 2013, as amended and assigned to S&S IP Holdings Limited pursuant to that certain trademark assignment dated as of September 4, 2014.

"**Affiliate**" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with, such other Person. For purposes of this definition, "control" when used with respect to any Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have correlative meanings.

"**Agreement**" has the meaning set forth in the preamble.

DocuSign Envelope ID: 3EG42904-DFF3-4E7E-900B-A53CAAD498B7

"**Ancillary Documents**" means the Bill of Sale, Assignment and Assumption Agreement, and any other document or instrument of transfer or otherwise executed at the Closing in order to evidence the transfer of any Purchased Assets to the Purchaser or to evidence Purchaser's assumption of any Assumed Liabilities.

"**Assumed Liabilities**" has the meaning set forth in Section 2.2.

"**Avoidance Actions**" means any and all claims for relief or causes of action of Seller (i) under Chapter 5 of the Bankruptcy Code; and (ii) against the former or current officers, directors and members of Seller.

"**Bankruptcy Code**" means The Bankruptcy Reform Act of 1978, as heretofore and hereafter amended, and codified as 11 U.S.C. Sections 101, *et seq*.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York, or any other court, having jurisdiction over the Case from time to time.

"**Business**" has the meaning set forth in the recitals hereto.

"**Business Day**" means any day of the year, other than a Saturday or Sunday, on which national banking institutions in New York, New York, are open to the public for conducting business and are not required or authorized by law to close.

"**Case**" means the Chapter 11 case that Seller intends to file in the Bankruptcy Court.

"**Closing**" has the meaning set forth in Section 10.1.

"**Closing Date**" has the meaning set forth in Section 10.1.

"**Code**" means the Internal Revenue Code of 1986, as heretofore or hereafter amended.

"**Confirmation Order**" means an order of the Bankruptcy Court, in form and substance reasonably satisfactory to Seller and Purchaser, authorizing, among other things, the execution of this Agreement by Seller, the sale of the Purchased Assets to the Purchaser, and the other transactions contemplated herein in accordance with the terms and conditions of this Agreement and pursuant to, among others, Sections 363, 365 and 1141 of the Bankruptcy Code.

"**Damages**" means losses, amounts paid in settlement, Taxes, claims, damages, Liabilities, obligations, judgments, settlements and reasonable out-of-pocket costs and reasonable expenses and attorneys' fees of Purchaser; provided, however, that Damages shall not include (i) any incidental or consequential damages; or (ii) any special or punitive damages.

"**Encumbrance**" means any charge, lien, claim, mortgage, lease, hypothecation, deed of trust, pledge, security interest, option, right of use, first offer or first refusal, easement, servitude, restrictive covenant, encroachment, encumbrance, or other similar restriction of any kind.

"**Excluded Liabilities**" has the meaning set forth in Section 2.2(b).

DocuSign Envelope ID: 7EG43904-DFF3-4E7E-900B-A53CAAD498B7

"**Excluded Assets**" means any Receivables generated prior to the Closing Date; any cash, cash equivalents and marketable securities of Seller, including cash held in escrow, the Deposit and any other escrow established hereunder, all bank accounts of Seller, and all books and records related thereto; any capital stock or equity interest held by any Seller in any other Seller or any other Person; tax refunds and tax attributes related to any taxable period (or portion thereof) ending on or prior to the Closing Date; all insurance policies and other agreements, and all rights thereunder with respect to occurrences (such as casualties) prior to the Closing Date; all rights, claims and causes of action of the Seller under this Agreement, any rights of the Seller against Purchaser under any Ancillary Document or any other agreement between Seller and Purchaser; any asset of Seller that would constitute Purchased Assets if owned by such Seller on the Closing Date that is conveyed or otherwise disposed of during the period from the date hereof until the Closing Date, but only to the extent such conveyance or disposition is in the ordinary course of the Business and not in violation of the terms of this Agreement, including Section 5.1 hereof or as otherwise expressly permitted by the terms of this Agreement; all rights, including the rights of offset and recoupment, claims or causes of action that relate solely to any Excluded Assets or any contract or agreement that either is not assumed by or assigned to the Purchaser or which has expired prior to the Closing Date; any Permits that are not legally assignable and any non-assignable licenses or user or other agreements granted to any Seller with respect to Seller's Intellectual Property; Avoidance Actions; and all of Seller's certificates of incorporation, certificates of formation, by-laws, operating agreements and other organizational documents, qualifications to conduct business as a foreign entity, arrangements with registered agents relating to foreign qualifications, taxpayer and other identification numbers, seals, minute books, stock transfer books, stock certificates and other documents relating to the organization, maintenance and existence of any Seller as a corporation, limited liability company or other entity (Seller shall, however, allow Purchaser access to and use of the records as needed in conducting Purchaser's business after reasonable notice and during normal business hours).

"**Expense Reimbursement**" has the meaning set forth in Section 11.2.

"**GAAP**" means United States generally accepted accounting principles, as in effect from time to time.

"**Governmental Authority**" means (a) any international, foreign, federal, state, county, local or municipal governmental or administrative agency or political subdivision thereof, (b) any governmental authority, board, bureau, commission, department or instrumentality, (c) any court or administrative tribunal, (d) any non-governmental agency, tribunal or entity that is vested by a governmental agency with applicable jurisdiction or (e) any arbitration tribunal or other non-governmental authority with applicable jurisdiction.

"**Intellectual Property**" means, collectively, patents, trademarks, service marks, trade names, trademark registrations, service mark registrations, domain names, social media accounts, copyrights, licenses and know-how (including, without limitation, trade secrets and other unpatented and/or unpatentable proprietary or confidential information, systems or procedures, as well as other inventions, works of authorship, confidential information, technology, software, excluding licenses to off the shelf software, and documentation, data and databases, and web sites), and any registrations or applications to register the foregoing and all goodwill associated therewith.

3

"**Inventory**" means all inventory of any kind or nature, whether or not prepaid, including without limitation, raw materials and supplies, manufactured and purchased goods, and all goods in process and finished goods used in, held for use in, necessary to or primarily relating to Seller's Business as of the Closing Date.

"**IRS**" means the Internal Revenue Service of the United States Department of the Treasury.

"**Liability**" means any liability or obligation (whether known or unknown, asserted or unasserted, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, and whether due or to become due), including any liability for Taxes.

"**Material Adverse Change**" means any fact, condition, change, violation, inaccuracy, circumstance, effect or event, individually or in the aggregate, that (i) has, or would reasonably be likely to have, a material adverse effect on the assets, liabilities, properties, results of operations or financial condition of the Business (excluding the Excluded Assets and the Excluded Liabilities) and the Purchased Assets and the Assumed Liabilities, taken as a whole, or (ii) has or would reasonably be likely to prevent, materially delay or materially impair the ability of Seller to perform their respective obligations hereunder or to consummate the transactions contemplated hereby.

"**New Employees**" has the meaning set forth in Section 13.1.

"**No Recourse Party**" has the meaning set forth in Section 14.10.

"**Outside Date**" has the meaning set forth in Section 11.1(a)(iv).

"**Party**" or "**Parties**" means, individually or collectively, Purchaser and Seller.

"**Permit**" means any permit, approval, authorization, license, variance or permission required by a Governmental Authority under any applicable law that are now or hereafter held by Seller pertaining to the operation by Seller of the Business.

"**Permitted Encumbrances**" means (i) statutory liens for current property Taxes and assessments (A) not yet due and payable; or (B) being contested in good faith by appropriate proceedings for which adequate reserves have been made in accordance with GAAP, including liens for ad valorem Taxes and statutory liens not yet due and payable arising other than by reason of any default by Seller, (ii) easements, covenants, conditions, restrictions and other similar matters of record on real property, leasehold estates or personalty that do not in any material respect detract from the value thereof and do not individually or in the aggregate in any material respect interfere with the present use of the property subject thereto, (iii) Encumbrances that constitute or secure Assumed Liabilities, and (iv) landlords', carriers', warehousemen's, mechanics', suppliers', materialmen's, repairmen's liens or other like Encumbrances arising in the ordinary course of business with respect to amounts not yet overdue or amounts being contested in good faith by appropriate Proceedings.

"**Person**" means any individual, partnership, corporation, trust, association, limited liability company, Governmental Authority or other entity.

DocuSign Envelope ID: 7EC43904-DFF3-4E7E-900B-A53C4AAD49B7

"**Plan**" or "**Plans**" means all "employee benefit plans", as defined in Section 3(3) of ERISA, and all other material employee benefit arrangements or payroll practices including, without limitation, any such arrangements or payroll practices providing severance pay, sick leave, vacation pay, salary continuation for disability, retirement benefits, deferred compensation, bonus pay, incentive pay, hospitalization insurance, medical insurance, life insurance, scholarships or tuition reimbursements, maintained by Seller or to which Seller is obligated to contribute thereunder for current or former Seller Employees.

"**Proceeding**" means any action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil, criminal, administrative or investigative) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Authority.

"**Purchase Price**" has the meaning set forth in Section 2.3.

"**Purchased Assets**" has the meaning set forth in Section 2.1

"**Purchaser**" has the meaning set forth in the preamble.

"**Receivables**" means any and all "Accounts" (as defined in the New York Uniform Commercial Code) of or owing to Seller arising prior to the Closing Date, including, without limitation, all accounts receivable, notes and other amounts receivable from third parties, including customers, arising from the business conducted by Seller prior to the Closing Date, whether or not in the ordinary course of business, together with any unpaid financing charges accrued thereon.

"**Seller**" has the meaning set forth in the preamble.

"**Seller Employees**" means the employees of Seller.

"**Subsidiary**" means, when used with reference to any Person, any corporation, partnership, limited liability company, joint venture, stock company or other entity of which such Person (either acting alone or together with its other Subsidiaries), directly or indirectly, owns or has the power to vote or to exercise a controlling influence with respect to more than 50% of the capital stock or other voting interests, the holders of which are entitled to vote for the election of a majority of the board of directors or any similar governing body of such corporation, partnership, limited liability company, joint venture, stock company or other entity.

"**Tangible Personal Property**" means tangible personal property, including, without limitation, archives, samples, furniture, fixtures, furnishings, screens, artwork, drawings, renderings, equipment (including, without limitation, warehouse, office and computer equipment), machinery, tools, supplies, spare parts, molds, trucks, cars, other vehicles and rolling stock, furniture, fixtures, trade fixtures, leasehold improvements, office materials and supplies.

"**Tax Return**" means any report, return, information return or other information required to be supplied to a taxing authority in connection with Taxes.

"**Tax**" or "**Taxes**" means all federal, state, local and foreign taxes, including income, gross receipts, excise, employment, sales, use, transfer, license, payroll, franchise, severance, stamp, withholding, Social Security, unemployment, disability, real property, personal property,

registration, alternative or add-on minimum, estimated or other tax, including any interest, penalties or additions thereto, whether disputed or not.

"**Transaction Taxes**" has the meaning set forth in Section 12.1.

**ARTICLE 2**
**PURCHASE AND SALE**

**Section 2.1.**    **Purchase and Sale of the Purchased Assets**.

(a)    On the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Seller shall sell, assign, transfer, convey, and deliver to Purchaser, free and clear of all Encumbrances (other than Permitted Encumbrances) pursuant to the Confirmation Order and the Bankruptcy Code, and Purchaser shall purchase and accept from Seller, all of the rights, properties and assets (of any description, kind or nature whatsoever, tangible or intangible, however denominated and wherever located) that are used, held for use or useable in connection with, or otherwise related to, the Business, excluding only the Excluded Assets, including, without limitation, all of Seller's right, title and interest in and to the following assets and properties (the "**Purchased Assets**"):

(i)    all Tangible Personal Property (wherever located), including all machinery, equipment, tools, tooling, supplies, furniture and furnishings, fixtures, computers and computer supplies, telecommunications equipment and other office supplies and equipment and related systems, automobiles, trucks and other vehicles, and other materials;

(ii)    the Inventory;

(iii)    all files, operating data, books of account, invoices, shipping records, supplier lists, purchase orders, price lists, vendor lists, mailing lists, catalogs, UPC prefixes, RN numbers, sales promotion literature, advertising materials, brochures, standard forms of documents, manuals of operations or business procedures, research materials, instruments, filings, administrative and pricing manuals, correspondence, memoranda, drawings, plans and specifications, maintenance or service records, operating records, operating safety manuals, and other material and documents, books financial statements, records and files (whether stored in hardcopy form or on magnetic, optical or other media) and any rights thereto owned, associated with or employed by Seller in the conduct of the Business or otherwise related to the Purchased Assets or the Assumed Liabilities;

(iv)    all rights under the Permits, to the extent transferable;

(v)    to the extent transferable and to the extent related to the Purchased Assets, or in connection with the Business, the full benefit of all representations, warranties, guarantees, indemnities, undertakings, certificates, covenants, agreements and all security therefor received by Seller on the purchase or other acquisition of the Purchased Assets;

DocuSign Envelope ID: 7EG42904-DFF3-4E7E-900B-A53CAAD498B7

(vi)    all of Seller's Intellectual Property;

(vii)    all goodwill associated with the Business or the Purchased Assets; and

(viii)    all telephone numbers, facsimile numbers, IP addresses and social media accounts owned, website domain addresses, used or held for use in connection with the Business or by Seller;

Notwithstanding anything to the contrary contained in Section 2.1(a), the Purchased Assets shall not include the Excluded Assets.

**Section 2.2.    Assumption of Liabilities**.

(a)    Subject to the terms and conditions set forth herein, including Section 2.2(b) below, on the Closing Date, Purchaser shall assume and agree to thereafter satisfy, perform and discharge as and when due the following Liabilities of Seller in respect of the ordinary and continuing operations of the Purchased Assets (collectively, the "**Assumed Liabilities**"):

(i)    all Liabilities arising after the Closing Date in connection with the ownership, operation and use of the Purchased Assets;

(ii)    all Liabilities relating to amounts required to be paid by Purchaser hereunder; and

(iii)    the Accrued Royalties, except only in an amount not to exceed $400,000.00.

(b)    All such Liabilities of Seller, of whatever kind or nature, known or unknown, fixed or contingent, accrued or unaccrued, other than the Assumed Liabilities, are hereinafter referred to as the "Excluded Liabilities." Purchaser shall not assume or pay, perform, discharge or be responsible for any of the Excluded Liabilities.

**Section 2.3.    Purchase Price**.

(a)    At the Closing, in addition to such other actions as may be provided for herein, Purchaser shall pay to Seller, in cash, an amount equal to $175,000.00 (the "**Purchase Price**"), subject to adjustments as provided herein, by wire transfer of immediately available funds to an account (which account shall be designated by Seller at least two (2) Business Days prior to the Closing).

(b)    On or about October 29, 2020, Purchaser shall deposit, or cause to be deposited in escrow, in cash or by wire transfer of immediately available funds a deposit in the amount of $17,500.00, representing 10% of the Purchase Price (the "**Deposit**").

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchaser as follows:

**Section 3.1.    Organization and Authority**. Seller is duly organized and validly existing under the laws of its state of incorporation and will be in good standing on the Closing Date. Subject to issuance of the Confirmation Order, Seller has full corporate or other organizational power and authority to execute and deliver this Agreement and each of the Ancillary Documents to which it is a party; the execution and delivery by Seller of this Agreement and the Ancillary Documents and the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary corporate or other organizational action on the part of Seller; and this Agreement constitutes, and each of the Ancillary Documents upon its execution will constitute, the legal, valid and binding obligation of Seller enforceable in accordance with its terms.

**Section 3.2.    No Conflict or Violation**. The execution, delivery and performance by Seller of this Agreement and the Ancillary Documents do not and will not violate or conflict with any provision of the Certificate of Formation or Limited Liability Company Operating Agreement of Seller and do not and will not violate any provision of law, or any order, judgment or decree of any court or other Governmental Authority applicable to Seller, or violate or result in a material breach of or constitute (with due notice or lapse of time or both) a default under any loan agreement, mortgage, security agreement, indenture or other instrument to which Seller is a party or by which it is bound.

**Section 3.3.    Consents and Approvals**. No consent, approval, authorization, order, registration or qualification of or with any court or governmental agency or body having jurisdiction over Seller or any of its property, other than the Bankruptcy Court, is required for the execution and delivery by Seller of this Agreement or the Ancillary Documents and performance of and compliance by Seller with all of the provisions hereof and thereof and the consummation of the transactions contemplated herein and therein, except the entry of the Confirmation Order. No consent, approval or authorization of any Person, other than the Bankruptcy Court, is required in connection with the execution and delivery of this Agreement or the Ancillary Documents or the consummation by Seller of the transactions contemplated herein and therein, except for any consent, approval, authorization, order, registration or qualification which, if not made or obtained, has not and would not reasonably be expected, individually or in the aggregate, to prohibit, materially delay or materially and adversely impact Seller's performance of its obligations under this Agreement or the Ancillary Documents.

**Section 3.4.    Broker**. Seller has not incurred any liability for any fee or commission to any broker, finder, investment banker or other intermediary in connection with the transactions contemplated by this Agreement that would result in any liability, fee, expense or obligation being imposed on Purchaser.

**Section 3.5.    Litigation**. Other than in connection with the Case, there are no actions, causes of action, claims, suits or proceedings pending or, to Seller's knowledge, threatened against Seller that (i) seek to restrain or enjoin the consummation of or would materially and adversely

affect, the transactions contemplated hereby; or (ii) could reasonably be expected to result in a Material Adverse Change.

**Section 3.6.    Compliance with Law**. Seller (i) has complied in all material respects with all laws, regulations, orders and other legal requirements applicable to the Business or the Purchased Assets, (ii) has not received written notice of any material violation of any law, regulation, order or other legal requirement; and (iii) is not in default in any material respect under any order, writ, judgment, award, injunction or decree of any Governmental Authority, applicable to the Business or the Purchased Assets.

**Section 3.7.    Title to Assets**. Seller has good and valid title to all the Purchased Assets. Pursuant to the Confirmation Order, Seller will convey to Purchaser such title or rights to use all of the Purchased Assets, free and clear of all Encumbrances (other than Permitted Encumbrances).

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller as follows:

**Section 4.1.    Authority**. Purchaser has full corporate or other organizational power and authority to execute and deliver this Agreement, and the execution and delivery by Purchaser of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary limited liability company action on the part of Purchaser, and this Agreement constitutes the legal, valid and binding obligation of Purchaser enforceable in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, moratorium, or similar laws from time to time in effect which affect creditors' rights generally, and by legal and equitable limitations on the enforceability of specific remedies.

**Section 4.2.    No Conflict or Violation**. The execution, delivery and performance by Purchaser of this Agreement and the Ancillary Documents do not and will not violate or conflict with any provision of the Certificate of Formation or Limited Liability Company Operating Agreement of Purchaser and do not and will not violate any provision of law, or any order, judgment or decree of any court or other Governmental Authority applicable to Purchaser, or violate or result in a material breach of or constitute (with due notice or lapse of time or both) a default under any loan agreement, mortgage, security agreement, indenture or other instrument to which Purchaser is a party or by which it is bound.

**Section 4.3.    Consents and Approvals**. No consent, approval, authorization, order, registration or qualification of or with any court or governmental agency or body or other entity or Person, other than the Bankruptcy Court, is required to be obtained or made by Purchaser for the execution and delivery by Purchaser of this Agreement or the Ancillary Documents to which it is a party and performance of and compliance by Purchaser with all of the provisions hereof and thereof and the consummation of the transactions contemplated herein and therein, except for any consent, approval, authorization, order, registration or qualification which, if not made or obtained, has not and would not reasonably be expected, individually or in the aggregate, to prohibit, materially delay or materially and adversely impact Purchaser's performance of its obligations under this Agreement.

**Section 4.4.** **Brokers**. No broker, finder, financial advisor or investment banker is entitled to any brokerage, finder's, financial advisor's or investment banker's fee or commission or similar payment in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Purchaser or any of its Affiliates for which Seller may become liable.

**Section 4.5.** **Availability of Funds**. Purchaser has and will at Closing have freely available funds sufficient to allow it to pay the Purchase Price at the times and in the manner set forth in this Agreement and to satisfy all its other obligations under this Agreement.

**Section 4.6.** **Condition of Business**. Notwithstanding anything contained in this Agreement to the contrary, Purchaser acknowledges, understands and agrees that Seller is not making any representations or warranties whatsoever, express or implied, beyond those expressly given by Seller in Article 3 hereof, and Purchaser acknowledges and agrees that, except for the representations and warranties contained therein, the Purchased Assets are being transferred on a "where is" and, as to condition, "as is" basis.

## ARTICLE 5
## CERTAIN COVENANTS OF SELLER

**Section 5.1.** **Conduct of Business Prior to the Closing**. Without the prior written consent of Purchaser or unless otherwise ordered by the Bankruptcy Court, between the date hereof and the Closing Date, except as required or expressly permitted pursuant to the terms hereof, Seller shall:

(i)    Not make any material change in the Purchased Assets or the Business as it relates to the Purchased Assets,

(ii)    Not enter into any transaction respecting the Business other than in any such case in the ordinary course of the Business consistent with the past practices taking into account its contemplated status as a debtor and debtor in possession, and

(iii)    Continue to operate the Business as it relates to the Purchased Assets in the ordinary course of the Business and consistent with past practices taking into account Seller's contemplated status as a debtor and debtor-in-possession and consistent with the debtor-in-possession operating budgets as approved in the Case.

**Section 5.2.** **Access to Information**. From and after the date hereof through the Closing Date, Seller shall permit representatives of Purchaser to have reasonable access during normal business hours after reasonable notice from Purchaser to Seller, and in a manner so as not to interfere with the normal operations, to all premises, properties, personnel, accountants, books, records, contracts and documents of or pertaining to the Business.

**Section 5.3.** **Further Assurance**. Upon the request of Purchaser at any time after the Closing Date, Seller shall forthwith execute and deliver such documents and take such actions as Purchaser or its counsel may reasonably request to effectuate the purposes of this Agreement, in each case at Purchaser's cost and expense.

**Section 5.4.**   **Reasonable Efforts**. Upon the terms and subject to the conditions of this Agreement, Seller shall use commercially reasonable efforts to (i) take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper consistent with applicable law to consummate and make effective in the most expeditious manner practicable the transactions contemplated hereby and (ii) obtain entry of the Confirmation Order by the Bankruptcy Court.

**Section 5.5.**   **Closing Conditions**. From the date hereof until the Closing, Seller shall use best efforts to take such actions as are necessary to expeditiously satisfy the closing conditions set forth in this Agreement.

## ARTICLE 6
## CERTAIN COVENANTS OF PURCHASER

**Section 6.1.**   **Reasonable Efforts**. Upon the terms and subject to the conditions of this Agreement, Purchaser will use commercially reasonable efforts to take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper consistent with applicable law to consummate and make effective in the most expeditious manner practicable the transactions contemplated hereby.

**Section 6.2.**   **Consents and Approvals Efforts**. Purchaser shall use commercially reasonable efforts to provide, at Seller's request, assistance in obtaining the Confirmation Order.

**Section 6.3.**   **Further Assurance**. Upon the request of Seller at any time after the Closing Date, Purchaser shall forthwith execute and deliver such documents and take such actions as Seller or their counsel may reasonably request to effectuate the purposes of this Agreement.

## ARTICLE 7
## CONDITIONS TO SELLER'S OBLIGATIONS TO CONSUMMATE THE CLOSING

The obligations of Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction (unless waived in writing by Seller) of each of the following conditions on or prior to the Closing Date:

**Section 7.1.**   **Representations and Warranties**. All of the representations and warranties made by Purchaser in this Agreement shall be true and correct in all material respects (other than those representations and warranties that are qualified by materiality, which shall be true and correct in all respects) as of the date hereof and as of the Closing Date as though made at and as of the Closing Date (except to the extent such representations and warranties expressly speak as of an earlier date, which shall be true and correct as of such date). Purchaser shall have delivered to Seller a certificate signed by an officer of Purchaser, dated the Closing Date, to the foregoing effect.

**Section 7.2.**   **Compliance with Agreement**. Purchaser shall have performed and complied in all material respects with all covenants and conditions to be performed or complied with by it on or prior to the Closing Date.

**Section 7.3.**   **Entry of the Confirmation Order**. (i) The Bankruptcy Court shall have entered the Confirmation Order; (ii) notwithstanding Bankruptcy Rules 3020(e), 6004(h) and

DocuSign Envelope ID: 7EG43904-DFF3-4E7E-900B-A83CAAD49B7

6006(d) the terms and conditions of the Confirmation Order will be effective and enforceable immediately upon entry; and (iii) the Confirmation Order shall not be stayed pursuant to an appeal or any other such order.

Section 7.4.    **No Legal Impediment to Closing**. There shall not be any Proceeding pending or threatened by any Governmental Authority challenging or seeking to enjoin or otherwise prohibit any of the transactions contemplated by this Agreement or seeking to obtain from Purchaser in connection with the transactions contemplated by this Agreement any damages or to impose any restrictions or conditions.

Section 7.5.    **Consents and Approvals**. All consents from any Person (including any Governmental Authority) which are necessary to consummate the transactions contemplated hereby shall have been filed, been obtained or occurred and such consents shall not have expired or been withdrawn.

Section 7.6.    **Purchaser Deliveries**. Each of the deliveries required to be made to Seller pursuant to Section 8.7 shall have been so delivered.

Section 7.7.    **Payment of Purchase Price**. Purchaser shall have paid the Purchase Price in accordance with Section 2.3.

**ARTICLE 8**
**CONDITIONS TO PURCHASER'S OBLIGATIONS**

The obligations of Purchaser to consummate the transactions contemplated by this Agreement are subject to the satisfaction (unless waived in writing by Seller) of each of the following conditions on or prior to the Closing Date:

Section 8.1.    **Representations and Warranties**. All of the representations and warranties made by Seller in this Agreement shall be true and correct in all material respects (other than those representations and warranties that are qualified by materiality or Material Adverse Change, which shall be true and correct in all respects) as of the date hereof and as of the Closing Date as though made at and as of the Closing Date (except to the extent such representations and warranties expressly speak as of an earlier date, which shall be true and correct as of such date); provided, however, that in the event of a breach of a representation or warranty, other than a representation or warranty qualified by a Material Adverse Change, the condition set forth in this Section 8.1 shall be deemed satisfied unless the effect of all such breaches of representations and warranties taken together result in a Material Adverse Change. Seller shall have delivered to Purchaser a certificate signed by an officer of Seller, dated the Closing Date, to the foregoing effect; provided, that none of such individuals shall have any personal liability arising out of or resulting from such certificate.

Section 8.2.    **Compliance with Agreement**. Seller shall have performed and complied in all material respects with all covenants and conditions to be performed or complied with by them on or prior to the Closing Date. Seller shall have delivered to Purchaser a certificate signed by an executive officer Seller, dated the Closing Date, to the foregoing effect; provided, that none of such individuals shall have any personal liability arising out of or resulting from such certificate.

DocuSign Envelope ID: 3EG43904-DFF3-4E7E-900B-A53CAAD49D97

**Section 8.3.    Entry of the Confirmation Order**. (i) The Bankruptcy Court shall have entered the Confirmation Order; (ii) notwithstanding Bankruptcy Rules 3020(e), 6004(h) and 6006(d) the terms and conditions of the Confirmation Order will be effective and enforceable immediately upon entry; (iii) the Confirmation Order shall not be stayed pursuant to an appeal or any other such order; and (iv) the Confirmation Order as entered by the Bankruptcy Court shall not modify the terms and conditions of this Agreement or the transactions contemplated hereby in any way that adversely affects Purchaser.

**Section 8.4.    Material Adverse Change**. No Material Adverse Change shall have occurred since the date of this Agreement arising from causes outside the control of Purchaser and which could not have been avoided by Purchaser's exercise of reasonable care.

**Section 8.5.    No Legal Impediment to Closing.** There shall not be pending or threatened by any Governmental Authority any Proceeding challenging or seeking to enjoin or otherwise prohibit any of the transactions contemplated by this Agreement or seeking to obtain from Purchaser in connection with the transactions contemplated by this Agreement any damages or to impose any restrictions or conditions.

**Section 8.6.    Consents and Approvals**. All consents from any Person (including any Governmental Authority) which are necessary to consummate the transactions contemplated hereby, including the transfer and sale of the Purchased Assets shall have been filed, been obtained or occurred and such consents shall not have expired or been withdrawn.

**Section 8.7.    Seller Deliveries**. Each of the deliveries required to be made to Seller pursuant to Section 10.2 shall have been so delivered.

## ARTICLE 9
## BANKRUPTCY COURT MATTERS

**Section 9.1.    Competing Bids**. This Agreement and the transactions contemplated hereby are subject to Seller's right and ability to consider higher and/or otherwise better competing bids with respect to the Business and the Purchased Assets. Seller has the right to, and may cause its representatives and Affiliates to, (a) initiate contact with any Person (in addition to Purchaser and its Affiliates and representatives) in connection with any sale or other disposition of the Purchased Assets; (b) respond to any request for information or due diligence inquiry, or make management available for such purposes, to any such Person; and (c) furnish any information with respect to, or assist or participate in, or facilitate in any other manner, any effort or attempt by any Person to do or seek to do any of the foregoing.

**Section 9.2.    Bankruptcy Court Filings**. Seller shall use reasonable best efforts to make any filings, take all actions and obtain any and all relief from the Bankruptcy Court that is necessary or appropriate to consummate the transactions contemplated by this Agreement and the Ancillary Agreements as promptly as practicable following the date hereof. Each Party agrees that it will promptly take such actions as are reasonably requested by any other Parties to assist in obtaining entry of the Confirmation Order and a finding of adequate assurance of future performance by Purchaser, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary

assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code and that the Purchase Price was not controlled by an agreement in violation of Section 363(n) of the Bankruptcy Code. In the event the entry of the Confirmation Order shall be appealed, Seller shall use its reasonable best efforts to defend such appeal unless and until Purchaser elects to terminate this Agreement in accordance with the terms hereof.

Section 9.3.    **Stalking Horse Designation**. Purchaser shall be designated as the stalking horse in the Case, whose bid for the acquisition of the Purchased Assets as contemplated under this Agreement will be subject to the right of overbid and topping bid by potential third-party purchasers.

Section 9.4.    **Motion**. Seller shall file a motion and/or plan of reorganization with the Bankruptcy Court seeking authority to consummate the transactions contemplated hereunder, including authority to convey and assign the Purchased Assets to Purchaser and to permit the assumption of the Assumed Liabilities by Purchaser pursuant to Sections 105, 363 and 365 of the Bankruptcy Code.

## ARTICLE 10
## THE CLOSING

Section 10.1.    **Closing**. The closing of the transactions contemplated hereby (the "Closing") shall take place at 10:00 a.m., Eastern Time electronically on the Business Day after all of the conditions to Closing set forth in Article 7 and Article 8 are either satisfied or waived (other than conditions which, by their nature, are to be satisfied on the Closing Date), or at such other time or date as Seller and Purchaser may mutually agree upon in writing. The date on which the Closing is to occur is herein referred to as the "Closing Date" (the "**Closing Date**").

Section 10.2.    **Deliveries by Seller**. At or prior to the Closing, Seller will deliver or cause to be delivered to Purchaser:

(a)    all of the Ancillary Documents to be executed and delivered by it and any other document contemplated by this Agreement to be executed and delivered by Seller; and

(b)    such other bills of sale, assignments, deeds, endorsements and other good and sufficient instruments of conveyance, assumption and transfer, in form reasonably satisfactory to Purchaser, as Purchaser may reasonably request in order to consummate the transactions contemplated hereby.

Section 10.3.    **Deliveries by Purchaser**. At or prior to the Closing, Purchaser will deliver or cause to be delivered to Seller:

(a)    the Purchase Price payable pursuant to and in accordance with Section 2.3.

DocuSign Envelope ID: 3EG43904-DFF3-4E7E-900B-A53CAAD49B7

(b)    all of the Ancillary Documents to be executed and delivered by it and any other document contemplated by this Agreement to be executed and delivered by Purchaser; and

(c)    such other bills of sale, assignments, deeds, endorsements and other good and sufficient instruments of conveyance, assumption and transfer, in form reasonably satisfactory to Seller, as Seller may reasonably request in order to consummate the transactions contemplated hereby.

## ARTICLE 11
## TERMINATION

**Section 11.1.  Termination**. This Agreement may be terminated at any time prior to the Closing:

(a)    by the mutual written consent of Seller and Purchaser;

(b)    by either Seller or Purchaser:

(i)    if the Bankruptcy Court does not approve this Agreement for any reason; provided, however, that the right to terminate this Agreement under this Section 11.1(b)(i) shall not be available to any Party whose breach of any of its representations, warranties, covenants or agreements contained herein has resulted in such failure to approve this Agreement;

(ii)    if the Confirmation Order is vacated;

(iii)    if upon written notice to the other Party, if the other Party is in material breach or default of any provision of this Agreement, which breach is not cured within three Business Days after written notice thereof is received, provided, however, that the terminating party is not in material breach or default of this Agreement; or

(iv)    if the Closing shall not have occurred by the close of business on December 15, 2020 (the "**Outside Date**"); provided, however, that the right to terminate this Agreement under this Section 11.1(b)(iv) shall not be available to any Party whose breach of any of such Party's representations, warranties, covenants, or agreements contained herein results in the failure of the Closing to be consummated by such time.

(c)    by Purchaser:

(i)    in the event of any breach of any of Seller's agreements, covenants, representations or warranties contained herein that would result in the failure of a condition set forth in Section 8.1 or Section 8.2 to be satisfied, and Seller has failed to cure such breach by the later of: (A) the Outside Date and (B) the date that is fifteen (15) days after receipt

(d)    by Seller:

15

          (i)      in the event of any breach of any of Purchaser's agreements, covenants, representations or warranties contained herein that would result in the failure of a condition set forth in Section 7.1 or Section 7.2 to be satisfied, and the failure of Purchaser to cure such breach by the earlier of (A) the Outside Date and (B) the date that is fifteen (15) days after receipt of Seller written notice of such breach; provided, however, that Seller is not then in material breach of any of their representations, warranties, covenants or agreements contained in this Agreement; or

          (ii)     if (A) the conditions to Closing in Article 8 have been satisfied (or waived by Purchaser), other than those conditions that by their nature can only be satisfied at Closing, (B) Seller has provided Purchaser with written notice that Seller is prepared to consummate the transactions contemplated by this Agreement, and (C) the Closing does not occur within three (3) Business Days following Seller delivery of such notice to Purchaser.

**Section 11.2.   Effect of Termination**. In the event of the termination of this Agreement, this Agreement shall forthwith become void and there shall be no liability on the part of any party hereto except:

          (a)     In the event this Agreement is terminated pursuant to Section 11.1(a), except as provided in this Section, all further obligations of the Parties hereunder shall terminate. If this Agreement is terminated as permitted by Section 11.1(b)(i), termination shall be without liability of any Party other than as set forth in Section11.2(c).

          (b)     Except as specifically provided in Section 11.2(c) below, if this Agreement is terminated, Seller shall return the Deposit (including any interest earned thereon) to Purchaser within 3 Business Days.

          (c)     Purchaser shall be entitled to reimbursement of all of Purchaser's documented, out of pocket costs and expenses (including financing fees, loan commitment fees, third party fees, legal fees and expenses, travel costs, and other out of pocket expenses) reasonably incurred in connection with the transactions contemplated hereby, in an aggregate amount not to exceed $25,000.00 ("**Expense Reimbursement**"), which shall be payable to Purchaser only if: (a) with respect to the Expense Reimbursement, Purchaser provides documentation evidencing such out of pocket costs and expenses prior to the Closing; (b) Purchaser is not in material breach of its obligations under this Agreement, which breach or default has not been waived in writing by Seller; (c) Purchaser and Seller have not otherwise terminated this Agreement pursuant to Section 11.1(a); and (d) following the auction, either (1) Purchaser is not the successful bidder at the confirmation hearing, and the Purchased Assets are sold to the successful bidder, or (2) Purchaser is the Successful Bidder, the conditions set forth in Article 7 and Article 8 have been satisfied or waived on or prior to the Outside Date, and Purchaser has represented to Seller that it is ready, willing and able to consummate the transactions contemplated hereby, but Seller fails to so consummate the transactions contemplated hereby. Any Expense Reimbursement to which Purchaser may be entitled hereunder shall be deemed an allowed and immediately payable administrative claim in the Case and shall be payable from the first proceeds of the third party sale that gives rise to such entitlement.

DocuSign Envelope ID: 7EG42904-DFF3-4F7E-900B-A53CAAD498B7

(d)     The Parties agree that if Purchaser breaches or fails to comply with any of its covenants, representations or warranties hereunder or if the transactions provided for in this Agreement are not consummated due to the breach or default of Purchaser, Seller shall be entitled to the Deposit. The Parties agree that the Deposit shall not preclude Seller from seeking specific performance of this Agreement.

## ARTICLE 12
## TAXES AND RECORD

**Section 12.1.  Taxes Related to Purchase of Assets.** Purchaser shall bear the cost of all state and local transfer, recording, stamp, sales or other similar taxes (collectively, "**Transaction Taxes**") that may be imposed by reason of the sale, transfer, assignment and delivery of the Purchased Assets, along with any recording and filing fees. Purchaser and Seller agree to cooperate to determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement. Transaction Taxes shall not include any Taxes for which Seller is responsible under Section 12.2. Purchaser and Seller agree to cooperate in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

**Section 12.2.  Proration of Personal Property**. Personal property taxes and assessments on the Purchased Assets shall be prorated between Purchaser and Seller as of the Closing Date with respect to a taxable period that includes (but does not end on) the date preceding the Closing Date, provided, however, that Seller shall not be responsible for any increased assessments on personal property resulting from the transactions contemplated hereby. All such prorations shall be allocated so that items relating to time periods ending prior to the Closing Date shall be allocated to Seller and items related to time periods beginning on or after the Closing Date shall be allocated to Purchaser. The amount of all such prorations shall be settled and paid on the Closing Date unless, with respect to Seller obligations hereunder, otherwise ordered by the Bankruptcy Court.

## ARTICLE 13
## EMPLOYEES AND EMPLOYEE BENEFITS

**Section 13.1.  New Employees**. Effective as of the Closing Date, Purchaser may, in its sole discretion offer employment to any and all of Seller Employees. All employees who accept Purchaser's offer of employment are referred to herein collectively as the "New Employees". Purchaser shall have access to and the right to meet with all of Seller Employees during normal business hours prior to the Closing Date.

**Section 13.2.  No Successor Employer Liability**. Purchaser shall not, for any purposes, be deemed a successor employer of any of Seller Employees, and Purchaser expressly does not assume any liabilities as a successor employer.

## ARTICLE 14
## MISCELLANEOUS

**Section 14.1.  Survival of Representations, Warranties and Covenants**.  The representations and warranties of Seller and Purchaser contained in this Agreement or in any certificate delivered hereunder shall not survive the Closing. The covenants and agreements

DocuSign Envelope ID: 7EC43904-DFF3-4E7E-900B-A53C4AAD49B7

contained herein that are required to be performed on or prior to the Closing Date shall terminate on the Closing Date and the covenants that require performance after the Closing Date shall survive in accordance with the terms thereof.

Section 14.2. **Notices**. All notices, requests, claims, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given (a) upon delivery in person, or (b) on the first Business Day following the day on which the same has been sent (charges prepaid) by reputable national overnight air courier service for next day delivery as follows:

To Purchaser:

JS BRANDS LLC
245 East 40th Street, Apt. 25A
New York, NY 10016
Attention: Jason Jacobs

with a copy (which shall not constitute notice to Purchaser) to:

Daniel M. Hartman, Esq.25 Paine Avenue
New Rochelle, NY 10804
E-mail: dhart25@aol.com

To Seller

Branded Apparel Group LLC
141 West 36th Street, 10th Floor
New York, NY 10018
Attention: Gary Jacobs

with a copy (which shall not constitute notice to Seller) to:

Kudman Trachten Aloe Posner LLP
800 Third Avenue, 11th Floor
New York, NY 10022
Attention: Paul H. Aloe
E-mail: paloe@kudmanlaw.com

Section 14.3. **Amendments and Waiver**

(a)    The terms, provisions and conditions of this Agreement may not be changed, modified or amended in any manner except by an instrument in writing duly executed by each of the parties hereto.

(b)    Neither the failure nor any delay by any Party in exercising any right, power, or privilege under this Agreement or the documents referred to in this Agreement shall operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power, or privilege shall preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege. To the maximum extent permitted

by applicable law, (i) no waiver that may be given by a Party shall be applicable except in the specific instance for which it is given; and (ii) no notice to or demand on one Party shall be deemed to be a waiver of any right of the Party giving such notice or demand to take further action without notice or demand.

Section 14.4.  **Assignment**. This Agreement is binding upon and inures to the benefit of the successors and assigns of each Party to this Agreement (including any trustee appointed in respect of Seller under the Bankruptcy Code), but no rights, obligations or liabilities under this Agreement may be assigned by any Party without the prior written consent of the other parties hereto, provided, however, that, prior to Closing, Purchaser shall be permitted, upon prior notice to Seller, to assign all or part of its rights or obligations hereunder to an Affiliate, whereupon, references to "Purchaser" herein shall be deemed to refer to such Affiliate; provided that any such assignment shall not relieve Purchaser of any of its financial obligations to Seller hereunder.

Section 14.5.  **Fees and Expenses**. Except as otherwise set forth in this Agreement, each Party to this Agreement shall bear all of its legal, accounting, investment banking and other expenses incurred by it or on its behalf in connection with the transactions contemplated by this Agreement, whether or not such transactions are consummated.

Section 14.6.  **Entire Agreement**. This Agreement and the Ancillary Documents constitute the entire agreement between the parties hereto with respect to the subject matter hereof and supersede and are in full substitution for any and all prior agreements and understandings between them relating to such subject matter.

Section 14.7.  **Descriptive Heading**. The descriptive headings of the several Sections of this Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

Section 14.8.  **Governing Law; Jurisdiction**. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof. For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of, the Bankruptcy Court. After Seller is no longer subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of, the courts of the State of New York.

Section 14.9.  **Severability**. If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any Party in any material respect. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible In the event that any one

DocuSign Envelope ID: 3EG42904-DFF3-4E7E-900B-A53CAAD449B7

or more of the provisions contained in this Agreement or in any other instrument referred to herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by law, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement or any other such instrument. Furthermore, in lieu of any such invalid or unenforceable term or provision, the parties hereto intend that there shall be added as a part of this Agreement a provision as similar in terms to such invalid or unenforceable provision as may be possible and be valid and enforceable.

**Section 14.10. Non-Recourse.** No past, present or future director, officer, manager, employee, incorporator, member, partner, stockholder, agent, attorney or representative of the respective Parties to this Agreement, in such capacity (any such Person in such capacity, a "No Recourse Party"), shall have any Liability with respect to this Agreement or the transactions contemplated hereby, or with respect to any claim or cause of action that may arise based on, in respect of or by reason of this Agreement or the transactions contemplated hereby, or the negotiation, execution or performance of this Agreement or the transactions contemplated hereby.

**Section 14.11. Counterparts; Facsimile Signatures**. This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile, E-mail or scanned pages shall be effective as delivery of a manually executed counterpart to this Agreement.

* * * * *

     **IN WITNESS WHEREOF**, each of the parties has caused this Agreement to be duly executed on its behalf as of the day and year first above written.

**PURCHASER:**                **JS BRANDS LLC**

By: _Jason Jacobs_
        6A42C4ABA599494...

Name: Jason Jacobs

Title: Authorized Signatory

**SELLER:**                  **BRANDED APPAREL GROUP LLC**

By: _Gary Jacobs_
        E0CD159FD55B49A...

Name: Gary Jacobs

Title: Member

# **<u>EXHIBIT D</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BRANDED APPAREL GROUP LLC,[1] | Case No. 20-12552-scc |
| Debtor. | (Subchapter V) |

ORDER (A) APPROVING THE SALE AND ASSIGNMENT OF
SUBSTANTIALLY ALL ASSETS OF THE DEBTOR'S ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
PURSUANT TO 11 U.S.C. § 363 (b) AND (f), (B) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
PURSUANT TO 11 U.S.C. § 365, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Branded Apparel Group LLC (the "**Debtor**"), the

debtor and debtor-in-possession in the above-captioned chapter 11 case, for an order (the

"**Order**"), *inter alia*, pursuant to Sections 105, 363, and 365 of the United States Bankruptcy Code

(the "**Bankruptcy Code**") and Bankruptcy Rules 2002, 6004 and 6006 authorizing and approving

the sale of the Purchased Assets free and clear of liens, claims, interests, and encumbrances,

described in and pursuant to the terms and conditions of an executed Asset Purchase Agreement

for the Purchased Assets, dated as of [_____], 2020 (the "**APA**"), by and among the Debtor,

as seller, and [_____] ("**Purchaser**"), as purchaser, and (b) granting related relief; and the

Court having conducted a hearing on the Sale Motion on [_____], 2020 (the "**Sale**

**Hearing**"), and the Court having considered the Sale Motion, all responses filed thereto, as well

as any evidence presented at the Sale Hearing; and the Court having jurisdiction to consider and

determine the Sale Motion in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the

---

[1] The last four digits of the Debtor's federal tax identification number is 8524. The location of the Debtor's service address is: 141 West 36th Street, 10th Fl., New York, NY 10018.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Sale Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor; the Court hereby finds and determines as follows:

### General

A.     The Court has jurisdiction to consider the Sale Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334. The Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Sale Motion are 11 U.S.C. §§ 105, 363, and 365 and FED. R. BANKR. P. 2002, 6004, and 6006.

C.     On November [__], 2020, the Court entered the Order Establishing Bidding Procedures and Related Relief Regarding the Sale of Substantially All of the Debtor's Assets (the "**Bidding Procedures Order**") [Docket No. ___], establishing, among other things: (a) Bidding Procedures (as defined in the Sale Motion), including manner and form of notice to be applied during a sale of the Debtor's assets and assumption and assignment of related contracts, (b) a date for the Auction, and (c) a date for the Sale Hearing to consider approval of the Auction results.

D.     As evidenced by the certificates of service filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, and sufficient notice of the Sale Motion, the transactions contemplated therein (including the assumption and assignment of the Assigned Contracts), the Bidding Procedures Order, the Bidding Procedures, the Auction, and the Sale Hearing has been timely provided to all parties in interest in accordance with Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006; (ii) such notice was good and sufficient under the circumstances; and (iii) no other or further notice of the Sale Motion, the transactions contemplated therein (including the assumption and assignment of the

Assigned Contracts), the Bidding Procedures Order, the Bidding Procedures, the Auction, the Sale Hearing, or the entry of this Order is required.

E.      A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to: (i) counsel to Merchant Factors Corp. ("**MFG**"); (ii) the Subchapter V Trustee; (iii) the Debtor's creditors (iv) the Office of the United States Trustee; (v) all Counterparties to the Assigned Contracts; (vi) all parties who have made an offer on some or all of the Assets or expressed an interest in making an offer on some or all of the Assets; (vii) all known persons holding a lien on any of the Purchased Assets; (viii) all known creditors; and (ix) all entities who have requested notice under Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). Counsel for the Debtor has filed with the Court affidavits of service of Notice of the Bidding Procedures Order, detailing the manners of service of, and the persons served with, the Bidding Procedure Order.

## The Chapter 11 Case

F.      On October 29, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. On [_____], 2020, [_____] was appointed as the Subchapter V Trustee.

## The Marketing Process

G.      Prior to the filing of the Chapter 11 Case, the Debtor engaged in a short, but intensive process designed to canvas the market for enterprises such as those operated by the Debtor.

H.      The Debtor provided notice to all parties as required under the Bidding Procedures Order.

I.     At the Auction for the Purchased Assets, the Debtor determined that [_____] submitted the highest and best offer for the Purchased Assets.

J.     The Bidding Procedures afforded a full, fair, and reasonable opportunity for any entity to make a higher or better offer to purchase the Purchased Assets.

K.     The Debtor and Purchaser have complied with the Bidding Procedures Order in all respects.

## The Sale of the Purchased Assets to Purchaser

L.     The transactions effectuating, and the terms and conditions governing, the sale of the Purchased Assets are embodied in the APA, which was filed with the Court on [_____], 2020 [Docket No. ____].

M.     The APA provides that the sale of the Purchased Assets shall be free and clear of all liens, claims, interests, and other encumbrances within the meaning of 11 U.S.C. § 363(f).

N.     Purchaser's obligation to consummate the transactions contemplated in the APA is subject to the satisfaction of specific conditions outlined in the APA, including the condition of Court approval. As of the date of entry of this Order, there has been no failure to satisfy any condition under the APA to Purchaser's obligation to consummate the Proposed Sale of the Purchased Assets that by its nature should have been satisfied prior to the date hereof.

O.     The APA was negotiated, proposed, and entered into by and among Purchaser and the Debtor without collusion, in good faith, and from arm's length bargaining positions. The sale process conducted by the Debtor and its representatives was non-collusive, fair, and reasonable and was conducted in good faith. Neither the Debtor nor Purchaser has engaged in any conduct that would cause or permit the application of 11 U.S.C. § 363(n) to the sale, including having the APA voided.

P.      Purchaser is a good faith purchaser in accordance with 11 U.S.C. § 363(m) and, as such, Purchaser and its assignees and designees are entitled to all of the protections afforded thereby. Absent a stay of the effectiveness of this Order, if any, Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transaction under the APA, including the assumption and assignment of the Assigned Contracts, upon the entry of this Order.

Q.      The Assigned Contracts to be assumed and assigned to Purchaser are valid and binding, in full force and effect, and enforceable in accordance with their terms and are property of the Debtor's estate pursuant to Section 541(a) of the Bankruptcy Code, and Purchaser shall have all of the rights of the Debtor thereunder.

R.      The terms and conditions of the APA to be complied with by Purchaser under the APA (i) are fair and reasonable; (ii) are valid, binding, and enforceable; (iii) constitute the highest and best offer for the Purchased Assets; (iv) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative; and (v) constitute reasonably equivalent value and fair consideration for the Purchased Assets.

S.      The transactions contemplated by the APA will, upon consummation thereof (the "**Closing**"), (i) be a legal, valid, and effective transfer of the Purchased Assets by the Debtor and its estate to Purchaser with no further action required on the part of the Debtor and (ii) vest Purchaser with good title to the Purchased Assets free and clear of all liens, claims, interests, and encumbrances within the meaning of 11 U.S.C. § 363(f).

T.      The relief sought in the Sale Motion, including approval of the APA and consummation of the transactions contemplated therein is in the best interests of the Debtor, its estate, creditors, and all parties in interest. The Proposed Sale of the Purchased Assets must be approved and consummated promptly in order to maximize the value of the Debtor's estate.

U.     Upon entry of this Order, the Debtor and its estate has good and marketable title to the Purchased Assets and all the corporate or organizational power and authority necessary to consummate the transactions contemplated by the APA.

V.     The Debtor has demonstrated good, sound, and sufficient business purpose and justification, and it is a reasonable exercise of its business judgment, to (i) sell the Purchased Assets on the terms and conditions set forth in the APA; (ii) assume and assign the Assigned Contracts to Purchaser; and (iii) consummate all transactions contemplated by the APA, and the sale, assumption and assignment of the Purchased Assets is in the best interests of the Debtor, its estate, and its creditors.

W.     The provisions of Sections 363 and 365 of the Bankruptcy Code have been complied with and are applicable to the sale of the Purchased Assets.

X.     The Debtor may consummate the transactions and transfer the Purchased Assets free and clear of all liens, claims, interests, and encumbrances because one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) have been satisfied. All liens, claims, interests, or encumbrances against the Purchased Assets shall attach to the proceeds of the transaction with the same validity, enforceability, priority, force, and effect that they now have as against the Purchased Assets.

Y.     The Debtor had (i) cured, or have provided adequate assurance of cure for all defaults under the Assigned Contracts, if any, existing before the date of this Order, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default before the date of this Order under the Assigned Contracts, if any, within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code, and Purchaser has provided

6

adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code.

**ACCORDINGLY, THE COURT HEREBY ORDERS THAT:**

1.      The findings of fact entered above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052, made applicable to this proceeding pursuant to FED. R. BANKR. P. 9014. To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

2.      The Sale Motion, to the extent not previously granted in the Bidding Procedures Order, is granted in its entirety on the terms and conditions set forth herein.

3.      All parties in interest have had the opportunity to object to the relief requested by the Debtor in the Sale Motion, and to the extent that objections to the Sale Motion have not been withdrawn, waived or settled, such objections and all reservations of rights included therein are overruled on the merits. Unless otherwise provided herein, the parties who did not object, or who withdrew their objections, to the Sale Motion, are deemed to have consented to the relief set forth therein.

4.      The APA and all of the terms and conditions contained therein are approved in their entirety. The APA is fully enforceable by the parties thereto in accordance with and subject to its terms and conditions. The Debtor is hereby authorized to perform each of its covenants and undertakings and to take such actions as may be necessary to effectuate the terms of this Order and as provided in the APA.

5.      The sale of the Purchased Assets and the terms and conditions contemplated by the APA, including, without limitation, the closing of the transaction contemplated by the APA, are hereby approved pursuant to 11 U.S.C. §§ 105(a), 363 and 365.

6.      The Debtor and Purchaser are authorized and directed, pursuant to 11 U.S.C. §§ 105(a), 363(b) and 365, to perform all of their obligations pursuant to the APA and to execute such other documents and take such other actions as are reasonably necessary to effectuate the transactions contemplated by the APA.

7.      Pursuant to 11 U.S.C. §§ 105(a), 363(f), and 365, upon the Closing, the Purchased Assets shall be sold, transferred, or otherwise assigned to Purchaser free and clear of all liens, claims, interests, and encumbrances, with all such liens, claims, interests, and encumbrances to attach to the proceeds of sale in the order of their priority, and with the same validity, priority, force, and effect that they now have as against the Purchased Assets.

8.      For the avoidance of doubt, the Purchased Assets shall be sold, transferred, or otherwise assigned to Purchaser free and clear of all liens, claims, interests, and encumbrances, and such liens, claims, interests, and encumbrances, if any, shall attach to the proceeds of the sale received from Purchaser in the order of their priority, and with the same validity, priority, force, and effect that they now have as against the Purchased Assets immediately prior to Closing.

9.      The transfer of the Purchased Assets to the Purchaser constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Purchased Assets free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever.

10.     The Debtor is authorized pursuant to 11 U.S.C. § 365(a) to assume and assign the contracts set forth on Schedule 2.01(e) to the APA as may be modified by Purchaser pursuant to Section 6.08 of the APA (the "**Assigned Contracts**").

11.     Pursuant to 11 U.S.C. § 365, the Debtor's assumption and assignment of the Assigned Contracts to Purchaser, on the terms contained in the APA, is approved, and the requirements of 11 U.S.C. § 365(b)(1) with respect thereto are deemed satisfied. The assignment by the Debtor of the Assigned Contracts to Purchaser pursuant to 11 U.S.C. § 365(f) is binding on the Counterparties to those contracts.

12.     Upon Closing pursuant to the APA, the Assigned Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, Purchaser in accordance with their terms, notwithstanding any provision in the Assigned Contracts (including, without limitation, those described in Sections 365(b)(2) and (1) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. Upon Closing, the Debtor is relieved from any further obligation or liability for any breach of the Assigned Contracts occurring after the assignment pursuant to 11 U.S.C. § 365(k).

13.     The Cure Costs as set forth in (i) the Potential Assigned Contract Notice or (ii) any stipulation entered into between the Debtor and the Counterparty to an Assigned Contract, as applicable, shall be controlling notwithstanding anything to the contrary in any Assigned Contract or other document, and the Counterparty to each Assigned Contract shall be forever barred from asserting any other claim arising prior to the date of entry of this Order against either the Debtor or Purchaser.

14.    The failure of the Debtor or Purchaser to enforce any term or condition of any Assigned Contract shall not constitute a waiver of such term or condition or of the Debtor's or Purchaser's rights to enforce every term and condition of the Assigned Contracts.

15.    This Order (a) is and shall be effective as a determination that, upon the Closing, except as expressly provided in the APA, all liens, claims, interests and encumbrances existing as to the Purchased Assets prior to the date of entry of this Order have been unconditionally released, discharged, and terminated in each case as to the Purchased Assets and (b) is and shall be binding upon and shall govern acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that Purchaser is the assignee of the Purchased Assets free and clear of all liens, claims, interests, and encumbrances. In addition, upon the Closing, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions to release its liens, claims, interests, or encumbrances in or on the Purchased Assets as may have been recorded or may otherwise exist.

16.    Except for the Assumed Liabilities, the consummation of the transactions in the APA and the transfer of the Purchased Assets shall not result in (a) Purchaser or the Purchased Assets having any liability or responsibility for any liens, claims, interests, or encumbrances against the Debtor or against any insider of the Debtor; (b) Purchaser or the Purchased Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any liens, claims,

interests, or encumbrances; or (c) Purchaser or the Purchased Assets having any liability or responsibility to the Debtor except as is expressly set forth in the APA.

17.     Except as otherwise provided in the APA or in this Order, Purchaser shall not be liable for any claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtor or any of its respective predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of successor or transferee liability, labor law, successor or successor employer liability, de facto merger or joint venture, mere continuation or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to Closing.

18.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Purchased Assets to Purchaser in accordance with the terms of the APA and this Order.

19.     The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of the Court after consultation with the Consultation Parties; provided, however, that any such modification, amendment or supplement is neither material nor changes the economic substance of the transactions contemplated hereby.

20.     Purchaser, as a purchaser in good faith, and its assignees and designees shall be entitled to the protections of 11 U.S.C. § 363(m).

21.     Purchaser has given substantial consideration under the APA for the benefit of the Debtor, its estate, and its creditors. The consideration given by Purchaser shall constitute valid and valuable consideration for the releases of any potential liens, claims, interests, and encumbrances pursuant to the Order, which releases shall be deemed to have been given in favor of Purchaser by all holders of any liens, claims, interests, and encumbrances against the Debtor or any of the Purchased Assets. The consideration provided by Purchaser for the Purchased Assets under the APA is fair and reasonable and, accordingly, the purchase may not be avoided under section 363(n) of the Bankruptcy Code.

22.     The provisions of this Order are self-executing and each and every foreign, federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and to recognize Purchaser as legal owner of the Purchased Assets, free of any and all liens, claims, interests, and encumbrances, which may have existed prior to the Closing.

23.     The Court shall retain exclusive jurisdiction (a) to enforce and implement the terms and provisions of the APA and each of the agreements, documents, and instruments executed therewith; (b) to resolve any disputes, controversies, or claims arising out of or relating to the APA or any claim, right, title, or interest which may be asserted against the Purchased Assets following the Closing notwithstanding the provision of this Order that such claims, rights, title, encumbrances, or interests to the extent they exist shall attach to the proceeds of the sale received from Purchaser; and (c) to interpret, implement and enforce the provisions of this Order.

24.     The terms of this Order and the APA shall be binding on and inure to the benefit of the Debtor, Purchaser, and all other parties in interest, and any successors of the Debtor, Purchaser,

and the Debtor's creditors, including any trustee or examiner appointed in the Chapter 11 Case or any subsequent cases.

25.     The failure to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that the APA be approved in its entirety.

26.     Any conflict between the terms and provisions of this Order and the APA shall be resolved in favor of this Order.

27.     Notwithstanding the possible applicability of FED. R. BANKR. P. 6004(h), 6006(d), 7062 and 9014, the terms and conditions of this Order shall be effective immediately and enforceable upon its entry, and no automatic stay of execution shall apply to this Order. The Debtor and Purchaser (if it elects to do so) are authorized to close immediately upon entry of this Order.

Dated: _____, 2020
      New York, New York

                                _____
                                THE HONORABLE SHELLEY C. CHAPMAN
                                UNITED STATES BANKRUPTCY JUDGE

# **<u>EXHIBIT E</u>**

Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
800 Third Avenue, 11th Floor
New York, New York 10022
Tel: (212) 868-1010
Fax: (212) 868-0013
Email: paloe@kudmanlaw.com
         dsaponara@kudmanlaw.com

*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BRANDED APPAREL GROUP LLC,[1] | Case No. 20-12552-scc |
| Debtor. | (Subchapter V) |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF**
**EXECUTORY CONTRACTS IN CONNECTION WITH THE SALE**
**OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

1.    On October 29, 2020, Branded Apparel Group LLC (the "**Debtor**"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (the "**Sale Motion**") for the entry of orders (a) establishing bidding procedures and bid protections, including an auction, as set forth herein (the "**Bidding Procedures**"), with respect to the Debtor's sale of substantially all of its assets free and clear of liens, claims, interests, and encumbrances (the "**Proposed Sale**"); (b) approving the form and manner of notices thereof (the "**Bidding Procedures Notice**"); (c) establishing JS Brands LLC ("JS Brands") as the stalking horse bidder for substantially all of the Debtor's assets (the "**Purchased Assets**"); (d) approving the form of Asset Purchase Agreement by and among the Debtor and JS Brands (the "**APA**"),[2]

---

[1] The last four digits of the Debtor's federal tax identification number is 8524. The location of the Debtor's service address is: 141 West 36th Street, 10th Fl., New York, NY 10018.

[2] A copy of the APA is attached as Exhibit "C" to the Debtor's *Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105, 363, and 365, and Rules 2002, 6004, and 6006: (A) Fixing the Time, Date and Place for Hearing to Consider Bidding Procedures in Connection with the Debtor's Sale of Substantially all of Its Assets; (B)(i) Establishing Bidding Procedures, (ii) Approving the Form and Manner of Notices, and (iii) Setting Hearing Date for the Hearing on Proposed Sale of Substantially all of the Debtor's Assets; (C) Approving the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances; and (D) Granting Related Relief* (the "**Sale Motion**").

pursuant to which the Debtor proposes to sell the Purchased Assets to JS Brands, or to a third party that makes a higher and/or better offer for the Purchased Assets; and (e) setting a hearing to consider approval of the Proposed Sale (the "**Sale Hearing**").

2.     On November 5, 2020, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. ___] approving the relief requested in the Sale Motion.

3.     The Sale Hearing will take place telephonically on **December 12, 2020, at 10:00 a.m.** (prevailing Eastern Time) before the Honorable Shelley C. Chapman, United States Bankruptcy Judge for the Southern District of New York. All attorneys and parties wishing to appear at the Sale Hearing must make arrangements with Court Solutions at https://www.court-solutions.com/ no later than 12:00 p.m. on the day prior to the Sale Hearing. The Debtor will have accepted the terms of the Winning Bidder only when such bid has been approved by the Bankruptcy Court pursuant to a Sale Order.

4.     In connection with the Proposed Sale, and in accordance with the Assumption and Assignment Procedures set forth in the Sale Motion and the Bidding Procedures Order, the Debtor may seek to assume and assign the Potentially Assigned Contracts (as defined in the Sale Motion) and execute and deliver to any Winning Bidder such documents or other instruments as may be necessary to assign and transfer the Potentially Assigned Contracts. Each of the Potentially Assigned Contracts are identified on the schedule attached hereto as Schedule 1 (the "**Potentially Assigned Contracts Notice**"). The cure costs under the Potentially Assigned Contracts, if any, that the Debtor believes is required to be paid to the applicable counterparty (the "**Counterparty**") to each of the Contracts to cure any monetary defaults under such Contracts pursuant to 11 U.S.C. §§ 365(b)(1)(a) and (b) is set forth on the Proposed Assigned Contracts Notice.

5.     Cure Objections:

    i.     Cure Objection Deadline: Any Counterparty to a Potentially Assigned Contract that wishes to object to the proposed assumption and assignment of the Potentially Assigned Contract, the subject of which objection is the Debtor's proposed costs to cure any outstanding monetary defaults then existing ("**Cure Costs**") under such contract (each, a "**Cure Objection**"), shall file with the Court and serve on the Objection Recipients its Cure Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Cure Objection Deadline**"). Replies, if any, to Cure Objection shall be filed by **December 11, 2020, at 4:00 p.m.** (prevailing Eastern Time).

    ii.    Resolution of Cure Objections: The Debtor and a Counterparty that has filed a Cure Objection shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the

---

Capitalized terms not immediately defined shall have the meanings assigned to them elsewhere in the Bidding Procedures Notice and the Sale Motion.

Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined by the Court at the Sale Hearing. The Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph.

iii.   Adjourned Cure Objections: If a timely Cure Objection cannot otherwise be resolved by the parties, such objection shall be heard at the Sale Hearing; provided that, a Cure Objection (and only a Cure Objection) may, at the Debtor's discretion, after consulting with the Consultation Parties and the Winning Bidder, be adjourned with the Court's consent (an "**Adjourned Cure Objection**") to a subsequent hearing. An Adjourned Cure Objection may be resolved after the closing date of the applicable Proposed Sale (and therefore the contract of the Counterparty in question may be assumed and assigned at Closing); provided that the Debtor maintains a cash reserve equal to the Cure Costs the objecting Counterparty believes is required to cure the asserted monetary default under the affected Potentially Assigned Contract.

iv.   Failure to Timely File Cure Objection: If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty shall be deemed to have consented to the assumption and assignment of the Potentially Assigned Contract (unless such Counterparty has timely filed an Adequate Assurance Objection with respect to the Assigned Contract) to the applicable Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment. Further, in the event no objections are timely filed and served, the Cure Costs set forth in the Potential Assigned Contract Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Potentially Assigned Contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any Potentially Assigned Contract, or any other document, and the Counterparty to the Potentially Assigned Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such Potentially Assigned Contract against the Debtor or any Winning Bidder(s), or the property of any of them.

6.   Adequate Assurance Objections:

i.   Adequate Assurance Information: The Debtor shall provide, with respect to JS Brands and each Qualified Bidder, the Adequate Assurance Information. The Debtor shall: (a) within 48 hours of receipt of an Offer from a Potential Bidder other than JS Brands, and (b) with respect to JS Brands, by no later than **November 24, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**Adequate Assurance Deadline**") provide a copy of the Adequate Assurance Information to those Counterparties (or their counsel) who have (x) submitted a written request (e-mail to the Debtor's counsel is acceptable)

for Adequate Assurance Information and (y) confirmed in writing to the Debtor's counsel (e-mail to the Debtor's counsel is acceptable) their agreement to keep such Adequate Assurance Information strictly confidential and use it solely for the purpose of evaluating whether a Potential Bidder, including JS Brands, has provided adequate assurance of future performance under the affected Assigned Contracts.

ii. <u>Adequate Assurance Objection Deadline</u>: Any Counterparty to a Potentially Assigned Contract that wishes to object to the proposed assumption and assignment of a Potentially Assigned Contract, the subject of which objection is a Winning Bidder's proposed form of adequate assurance of future performance with respect to such contract (each, an "**<u>Adequate Assurance Objection</u>**") shall file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including submitting any appropriate documentation in support thereof, by **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "**<u>Adequate Assurance Objection Deadline</u>**"). Replies, if any, to Adequate Assurance Objections shall be filed by **December 11, 2020 at 4:00 p.m.** (prevailing Eastern Time).

iii. <u>Resolution of Adequate Assurance Objections</u>: The Debtor and a Counterparty that has filed an Adequate Assurance Objection shall first confer in a good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance by the applicable Winning Bidder shall be determined by the Court at the Sale Hearing.

iv. <u>Failure to File Timely Adequate Assurance Objection</u>: If a Counterparty fails to timely file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Potentially Assigned Contract (unless the Counterparty has filed a timely Cure Objection with respect to the Potentially Assigned Contract) to the applicable Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption, assignment, and sale. Further, in the event no objections are filed and served, the applicable Winning Bidder shall be deemed to have provided adequate assurance of future performance with respect to the affected Assigned Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code, notwithstanding anything to the contrary in the Potentially Assigned Contract, or any other document.

7. <u>Other Sale Objections by Counterparties</u>:

i. <u>Objection Deadline</u>: Any Counterparty to a Potentially Assigned Contract that wishes to file a Sale Objection (other than a Cure Objection or an

Adequate Assurance Objection) to the proposed assumption and assignment of a Potentially Assigned Contract shall file with the Court and serve on the Objection Recipients its Sale Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than the Sale Objection Deadline of **December 4, 2020, at 4:00 p.m.** (prevailing Eastern Time). Replies, if any, to Sale Objections shall be filed by **December 11, 2020, at 4:00 p.m.** (prevailing Eastern Time).

ii.  <u>Failure of Counterparties to File Timely Sale Objection</u>: If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Sale Objection, the Counterparty shall be deemed to have consented to the assumption and assignment of the Potentially Assigned Contract (unless the Counterparty has filed a timely Cure Objection or Adequate Assurance Objection with respect to the Potentially Assigned Contract) to the applicable Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption, assignment, and sale.

iii.  <u>Reservation of Rights</u>. The inclusion of a Potentially Assigned Contract or Cure Costs on the Potential Assigned Contracts Notice shall not constitute or be deemed a determination or admission by the Debtor, the applicable Winning Bidder(s), or any other party in interest that such contract or other document is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Costs are due (all rights with respect thereto being expressly reserved). The Debtor and JS Brands reserve all of their rights, claims, and causes of action with respect to each Potentially Assigned Contract or other document listed on the Potential Assigned Contracts Notice. The Debtor's inclusion of any Potentially Assigned Contract on the Potential Assigned Contracts Notice shall not be a covenant, promise, or guarantee that such contract ultimately will be assumed and assigned. The Potential Assigned Contracts Notice shall be without prejudice to the Winning Bidder's rights (whether JS Brands or otherwise), if any, under the applicable asset purchase agreement, to subsequently exclude any Potentially Assigned Contracts from the assumption or assignment prior to the closing of the Proposed Sale, pursuant to the terms of the APA or Modified APA.

Dated:  New York, New York
          November __, 2020

By:  _____

          Paul H. Aloe
          David N. Saponara
          KUDMAN TRACHTEN ALOE POSNER LLP
          800 Third Avenue, 11th Floor
          New York, New York 10022
          Tel: (212) 868-1010
          Fax: (212) 868-0013
          Email:  paloe@kudmanlaw.com
                   dsaponara@kudmanlaw.com

          *Proposed Counsel to the Debtor*
          *and Debtor-in-Possession*